NELSON, Respondent, v. WILSON et al., Appellants.

(No. 6,244.)

(Submitted February 10, 1928. Decided February 24, 1928.)

[264 Pac. 679.]

*Fraudulent Conveyances — Husband and Wife — Gifts—What Constitutes "Indebtedness" of Grantor—Equity Guided by Established Rules and Precedents—Findings—When Conclusive—Appeal—Review of Evidence.*

Equity—Appeal—Findings—When Conclusive.
1. The findings of the trial court in an equity case will not be disturbed on appeal unless there is a decided preponderance of the evidence against them, nor where there is a sharp conflict in the evidence furnishing reasonable ground for different conclusions.

Appeal—Review of Evidence—Judgment Presumed Correct Until Contrary Shown.
2. On appeal the supreme court enters upon a review of the evidence, indulging the presumption that the judgment is correct, every legitimate inference being drawn from the evidence to support that presumption.

Husband and Wife—When Advancements Deemed Gifts.
3. Where a wife at various times turned over sums of money to the husband which were used for the common good, nothing being said about loans or repayment, the law presumes the transactions to have been intended as gifts, no promise to repay being implied.

Same—Fraudulent Transfers—Gifts.
4. A promise made by defendant to his dying wife that he would give to their child a sum equaling gifts of money made to him by the wife was without valuable consideration, and where at the time the husband in an endeavor to carry out the promise purchased real property for an amount equal to the gifts and placed title to it in the name of the child, he was indebted and the transaction left him without sufficient means to pay his creditor, the transfer was void as to him.

Gifts *Inter Vivos*—Essentials.
5. To constitute a gift one *inter vivos*, the donor must voluntarily deliver the subject of the gift to the donor, with the present intention to vest the legal title in the latter, who must accept it; delivery of a chose in action may be actual, constructive or symbolical; in the absence of either a written assignment is essential.

1. See 2 Cal. Jur. 920 et seq.; 2 R. C. L. 203 et seq.
2. See 2 Cal. Jur. 884; 2 R. C. L. 220.
3. See 13 R. C. L. 1387.
5. See 13 Cal. Jur. 37; 12 R. C. L. 932.

Gifts *Causa Mortis*—Essentials.

6. A gift *causa mortis* must be made in contemplation, fear or peril of death; the donor must die of the illness or peril which he then fears or contemplates, and delivery must be made with the intent that title shall vest only in case of death.

Fraudulent Conveyances—"Indebtedness" of Grantor—What Constitutes.

7. As against the contention that defendant at the time he made an alleged fraudulent conveyance was not indebted to plaintiff inasmuch as a mortgage indebtedness which he had assumed was not then due, *held* that a sum of money which is payable is a debt, without regard to whether it is immediately payable or at some future date, and that therefore defendant was indebted from the day he assumed the mortgage debt.

Equity—Court to be Guided by Established Rules and Precedents, Uninfluenced by Sympathy.

8. A court of equity has no more right than has a court of law to act on its own motion of what is right in a particular case but must be guided by established rules and precedents but little more elastic than those of law; therefore it may not in its decisions be swayed by sympathy or its own individual notions of natural right or justice.

---

[1, 2] Appeal and Error, 4 C. J., sec. 2662, p. 731, n. 81; sec. 2869, p. 900, n. 96; sec. 2870, p. 900, n. 98.

[3] Husband and Wife, 30 C. J., sec. 305, p. 708, n. 34.

[4] Fraudulent Conveyances, 27 C. J., sec. 277, p. 565, n. 4; sec. 292, p. 573, n. 13. Gifts, 28 C. J., sec. 21, p. 630, n. 66, sec. 103, p. 689, n. 19.

[5] Gifts, 28 C. J., sec. 19, p. 627, n. 34; sec. 37, p. 643, n. 85; sec. 58, p. 657, n. 67, 69; sec. 126, p. 700, n. 47.

[6] Gifts, 28 C. J., sec. 97, p. 687, n. 86.

[7] Debt, 17 C. J., sec. 1, p. 1374, n. 50; sec. 3, p. 1377, n. 92. Fraudulent Conveyances, 27 C. J., sec. 159, p. 498, n. 5; sec. 791, p. 842, n. 31. Indebtedness, 31 C. J., sec. 1, p. 411, n. 98.

[8] Equity, 21 C. J., sec. 1, p. 22, n. 6; sec. 185, p. 196, n. 59.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

SUIT by Olof Nelson against William A. Wilson and others. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Brown, Wiggenhorn & Davis* and *Mr. B. L. Price,* for Appellants, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

The circumstances to be proven in this action are: (1) Debts owing by defendant; (2) Lack of consideration for procuring

---

6. See 13 Cal. Jur. 42–45; 12 R. C. L. 962.
8. See 10 R. C. L. 262.

the conveyance; (3) Close kinship between defendant and the grantee. In the absence of any statute, we contend that all three of these elements must be present to entitle plaintiffs to any relief. The absence of either the first or the second is fatal to plaintiff's case. The third element is conceded. It must, of course, be borne in mind that the time of investigation is the time when the conveyance was made. That is to say, it is obvious that in the last analysis the inquiry is as to the good faith of the transaction attacked; and it is only the presence of the three elements referred to in or attending the transaction that aids us in determining whether the transaction was or was not fraudulent. "The intent to defraud creditors must exist at the time the transfer claimed to be fraudulent was made." (27 C. J. 506.) There is not a thing in the case which warrants even the suspicion that the defendant Wilson, in purchasing this property for his daughter, had any fraudulent intent or design to hinder, delay or defraud creditors. Upon the contrary, all the evidence demonstrates his complete good faith. We realize that one of the weaknesses of our defense, from a legal standpoint, is the absence of proof that at the time when defendant promised his first wife to make good the advances made by her by settling a like amount upon the daughter, he was then actually her legal debtor for these advances. His testimony merely shows that as she received the money from home she turned it over to him without any strings to it. We recognize that our testimony in this regard is weak, and that under the holding of this court the presumption of a gift rather than that of a loan follows. (*Bast* v. *Bast*, 68 Mont. 69, 217 Pac. 345.) We, however, desire to call the attention of the court to the fact that the case last cited is against the decided weight of authority. (*Stickney* v. *Stickney*, 131 U. S. 227, 33 L. Ed. 136, 9 Sup. Ct. Rep. 677; *In re Remmerde*, 206 Fed. 826; *In re Carpenter*, 179 Fed. 743; *Shaw* v. *Bernal*, 163 Cal. 262, 124 Pac. 1012; *Title Ins. & Trust Co.* v. *Ingersoll*, 158 Cal. 474, 111 Pac. 360; *Parrett* v. *Palmer*, 8 Ind. App. 356,

52 Am. St. Rep. 479, 35 N. E. 713; *Chadbourn* v. *Williams,*
45 Minn. 294, 47 N. W. 812; *Harter* v. *Holman,* 152 Wis. 463,
139 N. W. 1129; *Gilmore* v. *Gilmore,* 270 Fed. 260.)

Plaintiff's counsel will no doubt urge the technical objec-
tion that we have pleaded and proved only the assignment by
the wife of her chose in action to the daughter as a gift to
the daughter, and that as a gift either *causa mortis* or *inter
vivos* it lacks the necessary element of delivery; that such de-
livery would have to be evidenced, and could only be evi-
denced, where the chose is intangible, by a written assignment
or transfer. We do not agree that such written assignment
is indispensable to transfer the title to the chose as a gift so
as to make it legally enforceable against the debtor. (*Ebel* v.
*Piehl,* 134 Mich. 64, 95 N. W. 1004; *Castle* v. *Persons,* 117
Fed. 835, 54 C. C. A. 133; *Dinslage* v. *Stratman,* 105 Neb. 274,
14 A. L. R. 702, 180 N. W. 81; *Ogdon* v. *Washington Nat.
Bank,* 82 Ind. App. 187, 145 N. E. 514; *Mangan* v. *Howard,*
238 Mass. 1, 130 N. E. 76; *Herbert* v. *Simson,* 220 Mass. 480,
L. R. A. 1915D, 733, 108 N. E. 65.)

Conceding that upon the death of Maude Wilson there was
no enforceable, binding legal obligation upon defendant Wil-
son and therefore probably not such a legal consideration for
the transfer of the property to the daughter as the law would
recognize, yet in equity the obligation was sufficient to sup-
port the purchase of the property for the daughter. (27 C. J.
453; *Wolford* v. *Farnham,* 47 Minn. 95, 49 N. W. 528; *Far-
rington Tiling Co.* v. *Hazen,* 165 App. Div. 748, 151 N. Y.
Supp. 523; *First Nat. Bank of Lindsborg* v. *Nelson,* 115 Kan.
501, 223 Pac. 481.)

A voluntary conveyance is a conveyance without any valu-
able consideration and if there is a consideration, no matter
how trivial or inadequate, it is not a voluntary conveyance.
(*Hopkins* v. *White,* 20 Cal. App. 234, 128 Pac. 780.)

In considering this matter of debts, attention should also
be called to the fact that, to condemn a conveyance as fraudu-
lent, the fraud of the grantor, in so far certainly as determined

by debts is concerned, is not sufficient. The grantee also has some rights in the matter, excepting those cases where the conveyance is voluntary or without consideration, and intent by the grantor to defraud his creditors, not participated in or known to the grantee, will not serve to avoid the deed. (12 R. C. L. 506, 531, 665.)

*Messrs. Johnston, Coleman & Johnston,* for Respondent, submitted a brief; *Mr. Wm. M. Johnston* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

This is a suit in equity to have annulled, as fraudulent and void, a deed to real estate and to subject the real estate to a prior judgment held by plaintiff.

M. L. Parcells was the owner of a ranch, in Stillwater County, on which there was a mortgage, executed by Parcells, to secure payment of his promissory note for the sum of $3,000. The note and mortgage were held by plaintiff. May 14, 1919, for other property and further consideration, Parcells traded the ranch, subject to the mortgage, to William A. Wilson, a defendant herein, and deeded it to him. The deed of conveyance recited that the land was conveyed subject to the mortgage and provided that Wilson assumed and agreed to pay the indebtedness secured by the mortgage and Wilson accepted the deed with that provision in it. In addition to assuming such indebtedness and conveying to Parcells certain property, in exchange for Parcells' ranch, as a further consideration, Wilson gave Parcells a second mortgage on the Parcells ranch.

At no time thereafter did Wilson pay any of the principal of the assumed indebtedness to plaintiff or any interest thereon and the entire amount of principal and interest became due and was unpaid. Plaintiff instituted action, in Stillwater County, against Parcells and Wilson, to obtain a money judgment and to foreclose his mortgage. July 27, 1925, judgment against both, for $4,453.05, was obtained, with decree of fore-

closure and for sale of the premises. Upon judicial sale, August 31, 1925, the mortgaged property was bid in by plaintiff for the sum of $2,000, and deficiency judgment for $2,505.70 was entered against Parcells and Wilson. September 10, 1925, a transcript of the judgment was filed and entered in the office of the clerk of the district court of Yellowstone County.

Thereafter, two execution writs were issued and thereunder certain real estate in the Town of Laurel, in Yellowstone County, was levied upon. The return on the first writ showed that such realty stood in the name of C. W. Laird, a defendant herein, and that the realty, with any interest therein of William A. Wilson, was levied upon. The return on the second writ showed that such realty stood in the name of Katharine Pauline Wilson, a defendant herein, and that the realty, with any interest therein of William A. Wilson, was levied upon. Between the two levies and returns, a deed to the property, dated June 26, 1922, and expressing a consideration of $3,750, from C. W. Laird and wife to Katharine Pauline Wilson, was put on record in Yellowstone County. Katharine Pauline Wilson, then and now a minor, is the daughter of William A. Wilson. Defendant Frieda W. Wilson is his second wife.

The complaint alleges the foregoing stated facts and further alleges that, in 1921, William A. Wilson purchased the Laurel property from C. W. Laird and Olive H. Laird, his wife and also a defendant herein, for the sum of $3,750, there being entered into between those parties, at the same time, a contract of purchase of the property by Wilson, with the provision that when all payments should be made by him the Lairds would convey the property, by deed, to William A. Wilson; that, thereafter, William A. Wilson, being indebted to plaintiff for the full amount of the mortgage indebtedness theretofore by him assumed and having been theretofore and being then, and ever since, insolvent, wrongfully and fraudulently did cause the Lairds to convey the Laurel prop-

erty, by deed, to Katharine Pauline Wilson, with intent thereby to hinder, delay, defeat and defraud plaintiff and prevent collection of plaintiff's judgment against William A. Wilson and that such a deed, bearing date of June 26, 1922, was executed; that the deed never was delivered to Katharine Pauline Wilson but was delivered to William A. Wilson, who had it recorded in Yellowstone County, October 20, 1925; that Katharine Pauline Wilson did not pay any consideration for the property but William A. Wilson paid all of the consideration; that the property is the property of William A. Wilson and that Katharine Pauline Wilson has no interest therein; that the deed running to her is fraudulent and void; that unless it be set aside plaintiff will be unable to realize on his judgment against William A. Wilson and will be defrauded; that plaintiff obtained an order of court, giving leave to institute the action. Plaintiff prays that the deed to the Laurel property be held fraudulent and void and be set aside and that the property be subjected to his judgment against William A. Wilson.

The defendants answered. The answer admits some of the allegations of the complaint; denies others. For a separate defense, defendants allege there was a good, valid, sufficient consideration for the deed in question; that it was not made with any intent to hinder, delay or defraud creditors; that it was made when William A. Wilson was not insolvent and was not indebted to plaintiff; that Maude L. Wilson, William A. Wilson's first wife, died in 1916; that, during their coverture, she lent and advanced her husband about $4,000 of her personal money, acquired by gift or inheritance from her relatives; that, upon her deathbed, she assigned and transferred her husband's indebtedness to her, on account of such money received by him, to Katharine Pauline Wilson, their minor daughter, and requested that, in discharge thereof, her husband set apart for and transfer to the daughter money or property in that amount and that he agreed to do so, so soon as able; that, upon her death, the first wife left the sum of

$600 or $700, in cash, and it had been agreed that her husband would use it for such purpose; that, in pursuance of all thereof, in June, 1921, William A. Wilson, for the benefit of the daughter, entered into a contract with C. W. Laird to buy the Laurel property, a house and lot, for the agreed price of $3,750; that the contract ran to William A. Wilson because the daughter was a minor but it was understood she was to own the property and that the deed, when made, should be made to her; that, when payment was completed, a deed to the property, dated June 22, 1922, was made to the daughter and was delivered to her father for her and she became and is the owner of the property; that the deed was entrusted to William A. Wilson's second wife and, through her neglect, was not recorded until October 20, 1925.

In the separate defense of the answer, defendants deny that the deed was or is fraudulent and deny all allegations of intent to defraud and allege good faith. Defendants pray that plaintiff take nothing. Appropriate reply was made.

The cause was tried to the court without a jury. Parties plaintiff and defendant made request for findings and conclusions. The court made findings of fact and drew conclusions of law. By the findings, all of the material allegations of the complaint are upheld and the conclusions of law are in accordance therewith. Thereafter, a decree was rendered, granting to plaintiff all of the relief asked by him.

Defendants excepted to the findings and conclusions of the court and appealed from the decree. They assign numerous specifications of error; all of which may be summed up in the contention that the court erred in making its findings and drawing its conclusions and that it should have made findings and drawn conclusions in favor of defendants, as requested by them. The assignments being all substantially to the same effect, we consider them together.

This being an equity case, tried to the court, without a [1, 2] jury, as to questions of fact, arising under the evidence, the decision of the trial court will not be reversed un-

less it be shown there is a decided preponderance of evidence against the court's findings and where there is a sharp conflict in the evidence and it furnishes reasonable ground for different conclusions the findings will not be disturbed. (*Shepherd & Pierson Co.* v. *Baker,* ante, p. 185, 262 Pac. 887; *Williard* v. *Campbell Oil Co.,* 77 Mont. 31, 248 Pac. 219; *Thomas* v. *Standard Dev. Co.,* 70 Mont. 156, 224 Pac. 870; *Kummrow* v. *Bank of Fergus County,* 66 Mont. 434, 214 Pac. 1098.) We enter upon a review of the evidence, indulging the presumption that the judgment is correct. (*State ex rel. Woare* v. *Board of Commrs.,* 70 Mont. 252, 225 Pac. 389; *Dover Lumber Co.* v. *Whitcomb,* 54 Mont. 141, 168 Pac. 947.) Every legitimate inference will be drawn from the evidence to support this presumption. (*Security State Bank* v. *Soule,* 70 Mont. 300, 225 Pac. 127.) These judicial rules are firmly established in this state.

Careful study of the evidence fails to show a decided preponderance or any preponderance against the court's findings. There is some conflict of evidence, in instances sharp, and where it is so there is reasonable ground for different conclusions by different minds. The trial court heard and saw the witnesses and had opportunity to observe their demeanor and, under the oft-repeated rule in this jurisdiction, as stated above, we are not at liberty to disturb the court's findings upon questions of fact. We see nothing in the record to exempt this case from the rule.

As to questions of law, we believe the decision of the trial court to be correct. The principal question of law which arose at the trial we believe to be the question as to whether the aggregate sum of about $4,000 of her money, at different times turned over to William A. Wilson by his first wife, [3] constituted loan or gift. The evidence discloses nothing was said about loan, advance, repayment, reimbursement, expectancy, conditions; that there was no agreement or understanding; there was nothing said. Under those circumstances, the law presumes it was a gratuity. No contract or promise

to repay is implied. Unless shown by the evidence to be a loan or unless there are circumstances which indicate a loan, such a transaction must be regarded as a gift. It is so held in *Bast* v. *Bast*, 68 Mont. 69, 217 Pac. 345. Counsel for defendants criticise that decision but it is the law of this jurisdiction. We see no indebtedness to the wife.

The most we can make of it, from the evidence, is that the wife was generous with her husband and simply gave him, at [4] different times, as received by her, sums of money and that he used the money in investments for their joint benefit; used it for their support and common good, family expenses and purposes, she getting as much benefit therefrom as he; and that upon her deathbed she wanted him to be as generous to their child as she had been to him and to give the child a sum equal to her donations to him and that he promised to do so. If so, the promise was without a valuable consideration. Furthermore, if to be a gift, a person must be just before he is generous. (Bump on Fraudulent Conveyances, 4th ed., 283.) The evidence shows that, for several years, Wilson made no attempt to perform the promise and meantime he had become indebted to plaintiff. "Claims of justice precede those of affection," (2 Kent's Com., 13th ed., 624) or, we may add, of gratitude. If made as a gift, out of gratitude for the wife's generosity, and if it left Wilson without sufficient means to pay his creditors, the gift was void. (Bump on Fraudulent Conveyances, 4th ed., 291.)

If there was an indebtedness from Wilson to his first wife, to which we do not assent, counsel for defendants, in their brief, devote much attention to the contention that the wife, on her deathbed, made a gift of the indebtedness or chose in action to her daughter. However, the trial court held the facts not sufficient to effect a gift *inter vivos* or *causa mortis* and we believe the view of the court to be correct.

To constitute a gift *inter vivos*, the donor must voluntarily [5] deliver the subject of the gift to the donee, with the present intention to vest the legal title in the donee, who must

accept it; the essential elements are the delivery, the accompanying intent and acceptance by the donee. (*O'Neil* v. *O'Neil*, 43 Mont. 505, Ann. Cas. 1912C, 268, 117 Pac. 889.) Delivery of a chose in action may be actual, constructive or symbolical. (28 C. J. 657.) If there be no delivery (actual, constructive or symbolical), a written assignment is essential. (28 C. J. 699.) In this case, there was no delivery, actual, constructive or symbolical; and there was no written assignment.

A gift *causa mortis* is subject to three conditions: (1) It [6] must be made in contemplation, fear or peril of death; (2) the donor must die of the illness or peril which he then fears or contemplates; (3) delivery must be made with the intent that title shall vest only in case of death. (*O'Neil* v. *O'Neil*, supra.) Thus, we see there must be some kind of delivery of gift *causa mortis*, too, and in this case there was no delivery of any kind; nor is there any evidence that it was intended that title to the chose in action should vest in the daughter only in case of death of the mother, the donor; nor was there a written assignment, as a substitute for actual delivery. (20 Cyc. 1237.) After careful examination of the authorities cited by the respective counsel, we hold, in accordance with the rules declared in *O'Neil* v. *O'Neil*, supra, that, in this instance, the undisputed facts do not fulfill the requirements of either a gift *inter vivos* or a gift *causa mortis*.

Counsel for defendants, among other contentions, urge that the facts constitute novation of indebtedness. As we hold the facts do not show an indebtedness from husband to wife existed, it is not necessary to discuss that contention but we may say, from authorities cited and examined, we do not see a novation.

Counsel for defendants contend that at the time William A. [7] Wilson contracted with Laird for the purchase of the Laurel property Wilson was not indebted to plaintiff and, hence, was free to give direction then to have the property deeded to his daughter, when to be deeded, if he did give such direction then, as claimed. We do not agree with the conten-

[81 Mont. 560.]

tion. Wilson was indebted to plaintiff from the time he assumed the mortgage indebtedness that had been owed theretofore by Parcells alone. The fact that the indebtedness was not then due did not keep Wilson from being indebted to plaintiff. The term "indebtedness" means under legal liability to pay in the present or at some future time. (31 C. J. 411, and cases cited.) The word "debt" is defined as whatever one owes. (Anderson's Law Dictionary, 315.) When Wilson assumed the mortgage indebtedness, he owed plaintiff, as much as did Parcells. Plaintiff had the privilege of looking to either or both for payment. (*Murray* v. *Creese*, 80 Mont. 453, 260 Pac. 1051; *Kinyon Investment Co.* v. *Belmont State Bank*, 69 Mont. 282, 221 Pac. 286.) The word "debt" "is as applicable to a sum of money promised at a future day as to a sum now due and payable; the former is a debt owing, the latter, a debt due." (Anderson's Law Dictionary, 315.) A sum of money which is payable is a debt, "without regard to whether it be payable now or at a future time." (*People* v. *Arguello*, 37 Cal. 524.) "The money need not be immediately payable; obligations yet to become due constitute indebtedness, as well as those already due." (*St. Louis Perpet. Ins. Co.* v. *Goodfellow*, 9 Mo. 149.) "A party becomes indebted when he enters into an obligation to pay." (*Scott* v. *City of Davenport*, 34 Iowa, 208.) When Wilson assumed the mortgage indebtedness, he certainly owed plaintiff, even though the debt was not due. One who owes money, to be paid in future, may not say he does not owe it because not yet due. True, plaintiff had some security but it proved to be very inadequate and the indebtedness existed none the less. Other questions of law discussed we believe correctly decided by the trial court.

The question of insolvency of Wilson was a question of fact for the trial court and its decision will not be disturbed. As to the sum of $600 or $700, cash in bank, left by the deceased wife, which it is claimed was to go to the daughter, the evidence shows it was used, substantially all, for payment of ex-

penses of illness and funeral of decedent, so it is eliminated, practically.

Counsel for defendants contend that it was incumbent on plaintiff to establish three things: (1) Debts owing by defendant; (2) lack of consideration for procuring the conveyance; (3) close kinship between defendant and the grantee. The latter was admitted and did not need to be proven. The other two largely are questions of fact and were decided, under the evidence, by the trial court and, as different conclusions might be drawn, we may not interfere, so far as involving fact; as to the decisions, so far as questions of law are involved, we see no error.

Counsel for defendants, in their brief, argue, as they did in [8]  oral argument, appealingly to have this case decided by the administration of equity in a human way, as they call it, and not according to set rules of equity, which they liken to a cold, mechanical thing, a machine. They make a plea that invokes our sympathies. There is much in this case to appeal to sympathy. It has a pathetic side. However, even equity cases may not be decided upon sympathy or pathos. Equity does not permit judges to decide cases according to their individual notions of natural right and justice, in disregard of established rules and precedents. If that were done, there would be no uniformity and nobody would know what is equity; equity would be abolished. Equity has its own fixed precedents and principles, scarcely more elastic than those of law. (21 C. J. 22.) A court of equity has no more right than has a court of law to act on its own notion of what is right in a particular case but must be guided by the established rules and precedents. (10 R. C. L. 262.) Blackstone defines equity as "the correction of that wherein the law, by reason of its universality, is deficient," but he does not say it is to be administered without regard to rule or precedent. "The system of our courts of equity is a laboured, connected system, governed by established rules and bound by precedents, from which they do not depart." (2 Cooley's Blackstone, 4th ed., 432.)

Indeed, law and equity do not clash.   In many cases they are commingled, administered together, and the rules of each have place.   Any idea that the law judges in defiance of equity and that equity is not bound by the law is erroneous.   (2 Cooley's Blackstone, 4th ed., 430.)   While this case is a suit in equity, brought to obtain equitable relief, in it the law must be invoked to determine what rules govern transactions between husband and wife; to ascertain the rules which govern gifts *inter vivos* and gifts *causa mortis*; and the like; so both law and equity must be regarded.

Judging by established rules of equity, as well as those of law, when needed to be drawn upon, neither of which courts have a right to ignore, with the deference to a trial court's findings of fact required in this jurisdiction, we find no error in the record, and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.