IN RE BROWN'S ESTATE.

STATE, APPELLANT, v. PELLETIER ET AL., RESPONDENTS.

No. 8868

Submitted February 14, 1949. Decided May 13, 1949.

206 Pac. (2d) 816

452

Mr. R. V. Bottomly, Atty. Gen., Mr. Clarence Hanley, Asst. Atty. Gen., and Mr. H. O. Vralsted, Counsel for the Board of

Equalization, of Helena, for appellant. Mr. Vralsted argued orally.

Messrs. Jardine, Chase & Stephenson, of Great Falls, for respondents. Mr. Stephenson argued the cause orally.

MR. JUSTICE METCALF:

This is an appeal from an order of the district court determining inheritance tax. The court refused to impose an inheritance tax upon twenty-four United States savings bonds having a maturity value of $60,000 and an aggregate value of $57,135. The bonds are in four groups. Three of the groups consist of seven bonds each, each group having a maturity value of $10,000. One such group is made payable to the decedent, Clara Bullard Brown, or in the alternative, to her daughter, Marcia B. Brown. The second group is made payable to the decedent or in the alternative to her daughter Clara B. Pelletier, and the third group is made payable to the decedent or in the alternative to her son, Herbert W. Brown. The fourth group consists of three bonds of a maturity value of $10,000 each, purchased during the month of January 1942 and dated January 1, 1942. They were purchased for the decedent by the United States Trust Company of New York, decedent's bank in New York, upon her instructions, and at her request. She also requested that registration to be "$10,000 each in my name and names of my children." In accordance with this request, the three bonds were issued in her name with each of her three children designated as an alternative payee on one of the bonds.

The record shows February 3, 1941, the Great Falls National Bank of Great Falls rented a safety deposit box in the joint names of the decedent and her daughter Marcia Brown. Marcia testified that she had been familiar with her mother's business affairs since 1940 and had handled a great deal of her mother's business for her. Marcia further testified that since the rental of the joint safety deposit box in February of 1941 she had had complete access and entry to the safety deposit box in her own right and as joint owner thereof, had her own key and used the

box to store her valuables as well as to safeguard the valuables of her mother. The decedent rarely called at the box for any purpose but her daughter Marcia visited the box on an average of once a month, either on errands for herself or for her mother.

The actual purchase of the remaining bonds of the face value of $30,000 was handled by Marcia Brown. In December of 1941 three $5,000 bonds were purchased and registered in the names of Clara Bullard Brown and one of the three children was named as co-owner on each of the bonds. The remaining $15,000 worth of bonds was purchased at various times between December 1941 and November 1945. The trial court decided that there was no tax due on these bonds and from this decision the state board of equalization has appealed.

In the case of State Board of Equalization v. Cole, 195 Pac. (2d) 989, this court held that United States savings bonds were taxable under the inheritance tax statutes of the state of Montana. In that case the donor with her own funds purchased United States savings bonds and designated various donees as co-owners. Complete control and possession of the bonds was retained by the donor so that the bonds themselves as physical instruments of title remained under her control. We held that subsection 6 of section 10400.1, R. C. M. 1935, did not apply to savings bonds of this type because they were not held in the joint names of two or more persons as that phrase is used in the statute; that where there was no delivery of possession of the bonds themselves the donor could not make a completed gift inter vivos by registering the bonds in the name of the donee and the name of another as co-owner or alternate payee. We did indicate, however, that if there had been an actual delivery of the bonds after such registration, a completed gift would have been made.

The federal regulations in this respect are contained in Cumulative Bulletin, 1941-2 of the Internal Revenue Bulletin, Regulation 80, Ruling 1941-28-10776: "If 'John Jones' purchases with his separate funds savings bonds and has them registered in his name and that of another individual in the alternative as co-owners for example, 'John Jones or Mrs. Ella S. Jones,' there is

no gift for Federal gift tax purposes, unless or until he during his lifetime gratuitously permits 'Mrs. Ella S. Jones' to redeem them and retain the proceeds as her separate property, in which event a gift of the then redemption value of the bonds would be made. Of course, such bonds if not previously redeemed would, on the death of 'John Jones' be includible in his gross estate for estate tax purposes at their full redemption value.''

Likewise, for income tax purposes when bonds are registered to two persons as co-owners, for example, ''Mr. John Jones or Mrs. Ella S. Jones,'' the interest is assessed to the person who contributed the purchase price of the bonds. Internal Revenue Bulletin, Income Tax Rulings, Cumulative Bulletin, 1939–2, Ruling 1939–31–9929.

Our ruling in State Board of Equalization v. Cole, supra, is not quite so harsh in its application as that of the Internal Revenue Bureau. We hold that if there has been an actual delivery of the bonds themselves it constitutes a present inter vivos gift of the bonds. Since our inheritance tax laws do not impose a tax upon a gift unless it is a gift intended to take effect at or after death or is a gift in contemplation of death, it is first necessary to determine whether there was a completed gift of these bonds, and then to ascertain the nature of that gift.

A gift is defined by section 6882, R. C. M. 1935, as ''A transfer of personal property, made voluntarily, and without consideration.''

To constitute a gift of a chattel there must be (1) an intention on the part of the donor to make the gift; (2) delivery by the donor of the subject matter of the gift, and (3) acceptance of the gift by the donee. State Board of Equalization v. Cole, supra; Fender et al. v. Foust et al., 82 Mont. 73, 78, 265 Pac. 15.

This court has held that an irrevocable gift causa mortis may be made of a right represented by shares of stock by delivery of unendorsed certificate, Leyson v. Davis, 17 Mont. 220, 42 Pac. 775, 31 L. R. A. 429, and savings bank books and negotiable notes endorsed in blank, Fender v. Foust, supra. The question of a gift of a chose in action by delivery has been the subject of a good

deal of speculation by judges and text writers. See for example, Bruton, ''The Requirement of Delivery as Applied to Gifts of Choses in Action,'' 39 Yale Law Journal 837, and the articles and cases therein cited; 24 Am. Jur., ''Gifts,'' sec. 83, p. 773. The Contracts Restatement sums up the rule as follows: ''Sec. 158. In What Cases Gratuitous Assignments are Revocable. (1) The right acquired by the assignee under a gratuitous assignment is terminated by the assignor's death, by a subsequent assignment by the assignor, or by notification from the assignor received by the assignee or by the obligor, unless '' (b) the assigned right is evidenced by a tangible token or writing, the surrender of which is required by the obligor's contract for its enforcement, and this token or writing is delivered to the assignee * * *.''

Delivery of the instrument representing the chose in action ▉▉▉ may be actual delivery, constructive delivery, or symbolical delivery. Nelson v. Wilson, 81 Mont. 560, 264 Pac. 679. See Muir v. Gregory, 2 Cir., 168 F. 641. A constructive gift of instruments can be made by giving them to a third party with instructions to turn them over to the transferee on transferor's death or some other happening, but delivery is valid only if the deposit is irrevocable and the documents are placed entirely out of the transferor's power. Wilson v. Davis, 110 Mont. 356, 103 Pac. (2d) 149. ''If there be no delivery (actual, constructive or symbolical) [of a chose in action] a written assignment is essential.'' Nelson v. Wilson, supra [81 Mont. 560, 264 Pac. 682].

The three ''children'' are mature individuals. The youngest at the date of death of the decedent was 39. During the period these bonds were purchased Marcia Brown lived with her mother; Herbert W. Brown was in the army; Clara Pelletier resided at Choteau, Montana. Marcia testified without objection that as the bonds were purchased the decedent attempted to keep approximately the same amount in the name of each of the children. She said, ''We made an effort to keep it even at all times. She [Mrs. Clara B. Brown] wanted it to be the same amount in case we wanted to cash them. We would each have the same amount

to be fair on it, so I always had my sister's and my brother's ahead of mine just to be proper about it.''

Marcia was asked, if during the time she had access to the box either Clara or Herbert had wanted the bonds, would she have given them to him. Her answer was as follows: ''If mother had been here I would have consulted her, but had she been away I would not have hesitated if I felt that they needed the money at that time to let them have it.'' Further on Marcia testified, ''She [decedent] wanted to be very sure that she had it phrased correctly on the bond. There was a contention as to whether it should be 'and' or 'or.' As to that I had made a mistake and made it in such a way that she would have to be dead before the money could be collected. She did not want it that way. If for instance I ever wanted to cash one, she wanted me to be free to have it without her permission or if the others were short or needed money to deliver theirs.

''Q. Did she ever make any statement about if you were in need of money, you or the others? A. Yes, many times. As she was building this up she said she was glad she had it there in case of our needing it at any time, if my brother should want to go into business, or if he wanted a buy a new home, she said, 'You can go down and get your bonds.'

''Q. And to repeat, if the request had been made of you to produce a bond either by Herbert or by Clara, if your mother was not home so you could consult her or out of town you would have felt free to do so. A. Yes.''

The record shows that Herbert W. Brown and Clara Pelletier ██ knew of the existence of these bonds and knew that they were joint bonds. Their acceptance of the alleged gift can be presumed. Stagg v. Stagg, 90 Mont. 180, 188, 300 Pac. 539. The question then is, was there sufficient delivery of the actual bonds to each of the three children to constitute a gift.

Where actual manual delivery of the property is possible, de-██ livery should be so made and when the transaction is directly between the donor and the donee, delivery should be as complete as the circumstances will permit. 38 C. J. S., Gifts,

sec. 21, p. 801; 25 A. L. R. 646; 24 Am. Jur., "Gifts," secs. 83 and 84, pp. 773-774.

"Generally a donor must go as far as the nature of the property and the circumstances reasonably permit in parting with dominion and making the gift irrevocable. (Citing cases.)" Weil v. Com'r of Internal Revenue, 5 Cir., 82 F. (2d) 561, 563; Newsome v. Allen, 86 Wash. 678, 151 Pac. 111.

Dominion over the article given should be parted with and the gift must pass beyond the recall and power of revocation of the donor. And complete control should be vested in the donee. Wilson v. Davis, supra.

This court has said that the burden of establishing the fact of a gift is on the person claiming the gift. Stagg v. Stagg, supra. This is particularly true when the fact of alleged gift becomes a tax question.

A tax controversy does not arise until after the death of the donor. The transfer then is substantially testamentary. The only question in such litigation is whether or not the gift took place during donor's lifetime or at donor's death. The ultimate disposition of the property is not involved. In such cases a strict enforcement of the rules of delivery is necessary to protect the public interest.

In applying the foregoing rules to the case at bar we will first consider their application to the bonds in which Clara Pelletier and Herbert Brown were the co-owners; next to the three $10,000 bonds purchased by the New York bank, and lastly to the bonds in which Marcia B. Brown was co-owner.

As to the bonds deposited in the bank at Great Falls designating Clara B. Pelletier and Herbert W. Brown as alternate payees, there was no manual delivery even though manual tradition was practicable and there was a long period of time when manual delivery could have been made. There was here not even a change of possession as a result of the so-called gift. The donor had control of the bonds, could realize on them at her discretion, and the donees had nothing but an expectancy that the bonds would come to them at the death of donor. Even if it be contended that

delivery to Herbert was impracticable during the time he was in the army and overseas, the evidence shows that he was out of the army for a considerable period before his mother died. Marcia testified, "If Clara or Herbert had wanted the bonds we would have given them to him or her. If my brother wanted to go into business or he wanted to buy a new home she said, 'You can go down and get your bonds'." At most, that indicates a future intention to make a gift and is not an irrevocable, immediate gift in praesenti.

"There must be more than an intention on the part of the donor to personally give; it is necessary, also, that there be an actual delivery to the donee, and the delivery must divest the donor of present dominion and control over the property absolutely and irrevocably and confer upon the donee the dominion and control. A gift will not be presumed, but one who asserts title by this means must prove it by clear, convincing, strong and satisfactory evidence. Tucker v. Brown, 199 Wash. 320, 92 Pac. (2d) 221." In re Hamilton's Estate, 26 Wash. (2d) 363, 174 Pac. (2d) 301, 304.

Control over the bonds never passed from the donor to the donees in any way. There was no indication of a donative intention except for the fact that the bonds were registered in the names of the donees as co-owners, a circumstance which we have held in the case of State Board of Equalization v. Cole, supra, to be merely indicative of an intention to make a gift intended to take effect at or after death.

However, it is contended that here there was a constructive delivery, that there was a delivery to Marcia, a third person, who held the bonds as agent for her brother Herbert and her sister Clara. But Marcia acted as agent for her mother in drawing the money with which the bonds were purchased, in having the bonds made out, and in depositing them in a joint box. The possession of Marcia was at all times the possession of her mother. There was never any evidence of any intention on the part of Clara or Herbert to designate her as their agent, to have her act for them in any way. In order to have a delivery to a third per-

son as agent for the use of the donees the circumstances must indicate, as in an actual manual delivery, that the donor has relinquished all control, has irrevocably passed title to the bonds without any reference to the future, without any intention of repossessing the bonds, and thereby placed them entirely out of the transferor's power. Wilson v. Davis, supra, 110 Mont. 356, 364, 103 Pac. (2d) 149; 25 A. L. R. at page 652, and cases therein cited.

As for the bonds purchased by the New York bank, again there was never any delivery on the part of the donor. Clearly the bank was acting as Mrs. Brown's agent in the purchase of the bonds. It acted on her direction in the registration of the bonds in the names of Mrs. Brown and her three children. It continued to act as her agent in holding such bonds and it held them for the donor until the death of the donor and then by the terms of the contract recited in the bonds themselves, title passed to the donees as alternate payees but for tax purposes such passage of title was a transfer intended to take effect at or after death and therefore a taxable transfer. With respect to these bonds Marcia was in the same situation as her sister and brother.

Next as to the bonds registered with Marcia as co-owner: Marcia was authorized to draw the money to purchase the bonds and to register them in the name of her mother and herself. She deposited them with other valuables belonging to her solely in the safety deposit box held jointly with her mother. This was virtually joint possession. In a similar situation involving the gift of promissory notes from a husband to a wife the question of adequate delivery was held to be a question of fact for determination by the jury. Williams v. McElroy, 35 Ga. App. 420, 133 S. E. 297. In the instant case the findings of the trial court would be a substitute for the jury's determination. But each of these cases must be considered in the light of all the facts. An examination of the record reveals that Marcia was intended to be put in the same position as her brother and sister. Her own testimony was that "we made an effort to keep it even at all times." Possession is an indicia of title. Transfer of

possession has become one of the formal means to transfer title to a chattel. But to say that where the possession is joint, mere words indicating a gift will transfer title is to argue in a circle. See Mechem, Delivery in Gifts of Chattels; 21 Ill. Law Review 341, 457, 568.

To make the gift clear, definite and certain as is required for ▆▆▆▆▆ tax purposes the law provides for a written assignment.

For the reason that there was insufficient evidence of delivery of the bonds as instruments of title to the donees the respondents' contention that there was a gift fails. The registration of the bonds in the names of alternate payees becomes a testamentary disposition intended to take effect at or after the death of the donor and is a taxable transfer under the provisions of section 10400.1, R. C. M. 1935. In re Myers' Estate, 359 Pa. 577, 60 A. (2d) 50.

The decedent left a gross estate of $495,934.10 without including the bonds. If the $60,000 maturity value of the bonds is included the total estate would amount to $555,934.10. The respondents contend that the gift of these bonds to the children is not a gift of "a material part" of the estate and it is therefore not taxable under subdivision 3 of section 10400.1, R. C. M. 1935. The pertinent provision of that section is:

"Every transfer by deed, grant, bargain, sale or gift, made within three years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, * * * unless shown to the contrary be deemed to have been made in contemplation of death * * *."

This portion of subdivision 3 relates only to the taxation of transfers made in contemplation of death. Since we have determined that the purchase of the bonds by the decedent and their registration in the names of the children as alternate payees without delivery constituted a transfer intended to take effect at or after death, it is unnecessary to pass upon the question as to whether or not there was a gift of a material part of the estate. All gifts intended to take effect at or after death are testamen-

tary in character and are taxable. It is only when the gift is inter vivos in contemplation of death that it becomes necessary to determine whether the gift was of a material part of the estate.

The cause is remanded to the trial court for the assessment of inheritance tax in accordance with this opinion.

Mr. Chief Justice Adair and District Judge W. R. Flachsenhar (sitting in place of Associate Justice Bottomly, disqualified), concur.

MR. JUSTICE ANGSTMAN (dissenting) :

I think the delivery of possession of the bonds in question was compatible with a joint ownership thereof. The donor did not retain sole possession and control as in the Perier Estate Case, 122 Mont. 9, 195 Pac. (2d) 989. I think my associates have overlooked the point that there is a vast difference between the possession of one in sole ownership and the possession of each of two joint owners. My associates erroneously hold that a donor of bonds held in joint ownership must surrender complete control and possession thereof to the donee in order to give the donee any interest therein. I think if the donees in the instant case had available to them the means of realizing on the bonds, that is, if sufficient access to the bonds was made available to them so that they could have sold them if they so desired, then there was sufficient delivery to constitute them joint owners. Compare In re Myers' Estate, 359 Pa. 577, 60 A. (2d) 50. I think the evidence was sufficient to warrant the finding made by the court that decedent did not retain exclusive possession of the bonds.

The fact that the donor retained the right to sell the bonds herself is one of the incidents of joint ownership much the same as in the case of a joint bank account. In the creation of a joint ownership in personal property there need not be such delivery to one of the joint owners by the other as would meet the requirements of a completed gift of the whole interest in the chattel as in the case of Chambers v. McCreery, C. C., 98 F. 783, relied upon by appellants and as contemplated by the authorities relied on in

the majority opinion, all of which have to do with gifts of chattels and not with the creation of joint ownership interests.

Appellants also rely upon the case of In re Sawyer's Estate, Ohio Prob., 75 N. E. (2d) 695. But the Ohio statute on the taxability of a joint estate is so different from ours that the case is not helpful here.

I think this case calls for application of subdivision 6 of section 10400.1, R. C. M. 1935, reading: ''Joint estates. Whenever any property, real or personal, is held in the joint names of two or more persons, or as tenants by the entirety, or is deposited in banks or other institutions or depositaries in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons, the right of the surviving tenant by the entirety, joint tenant, or joint tenants, person or persons, to the immediate ownership or possession of such property shall be deemed a transfer of one-half or other proper fraction thereof as though the property to which such transfer relates belonged to the tenants by the entirety, joint tenants, or joint depositors as tenants in common, and had been bequeathed or devised to the surviving tenant by the entirety, joint tenant, or joint tenants, person or persons, by such deceased tenant by the entirety, joint tenant, or joint depositor, by will, except such part thereof as may be shown to have originally belonged to the survivor and never to have belonged to the decedent.''

The court I think erred in holding that the bonds were not held in the joint names of two or more persons within the meaning of subdivision 6 of section 10400.1, supra.

The federal regulations set out in Re Myers' Estate, supra, treat the alternate owners of such bonds as joint owners with the right of survivorship. The fact that those regulations as pointed out in the majority opinion regard the bonds for federal estate tax purposes as those of the person furnishing the money unless redeemed before his death is immaterial. It is our statute and not federal regulations which controls the taxability of such bonds for state inheritance tax.

There is language used in both the majority and minority

opinions in the Perier case, supra, which is open to the interpretation that bonds held in the alternate names of two owners can never be held in joint ownership within the meaning of subdivision 6 of section 10400.1. Doubtless this language was so interpreted by the lower court. I think since the federal government treats such bonds exactly the same as if they were issued in the names of two owners conjunctively, the fact that they are named as owners in the alternative is of no importance.

The conclusion in the Perier case, so far as the bonds there involved were concerned, was correct. The bonds there concerned were not jointly owned because the donor retained exclusive possession and control of them and the donees were not given access to them such as the court was warranted in finding was given here.

I think the order of the court should be ordered modified so as to permit one-half of the value of the bonds to be assessed for the inheritance tax.

MR. JUSTICE FREEBOURN (dissenting):

I agree with the result reached by Justice Angstman in this case; but do not think the conclusion reached by the court in the Perier case was correct.

Rehearing denied May 13, 1949.