LYONS, ET AL., RESPONDENTS, *v.* FRESHMAN, ET AL., APPELLANTS.

No. 8995.

Submitted October 13, 1950. Decided January 20, 1951.

226 Pac. (2d) 775.

Mr. James A. Poore, Jr., and Mr. Robert A. Poore, Butte, for appellants.

Mr. E. J. Foley, Butte, for Lyons.

Messrs. Corette, Smith and Dean, Butte, for Drake, et al.

Mr. Lewis F. Rotering, Butte, for Brophy, et al.

Mr. Robert A. Poore, Mr. Foley and Mr. Kendrick Smith argued orally.

MR. JUSTICE METCALF:

On September 20, 1948, Mr. and Mrs. John J. Scullin of Butte, Montana, were killed in an automobile accident at Beach, North Dakota. Mrs. Scullin predeceased her husband by ten minutes.

Mrs. Scullin was known as Genevieve Taylor prior to her marriage to Mr. Scullin. As Genevieve Taylor she owned 100 shares of 6% preferred stock of the American Power & Light Company, represented by certificate No. 50866, and other property not involved in this action. After her marriage to John J. Scullin she executed on a separate instrument an assignment purporting to transfer the American Power & Light stock to her husband. But she continued to receive the income from the stock. After the death of the Scullins the unendorsed stock certificate made to Genevieve Taylor and the assignment were found in a safety

deposit box in the First National Bank of Butte, Montana, along with other papers and securities belonging to each of them. The box was held jointly by them and both used it as a depository for their valuables. Two keys to the box were found; one was on a key ring identified as belonging to John J. Scullin; the other was on a separate key ring not proved to belong to either Mr. or Mrs. Scullin. However, it was stipulated that both had access to the safety deposit box.

This is an action by the administrator of the estate of John J. Scullin to recover from the administrator with the will annexed of the estate of Genevieve Taylor Scullin the stock certificate representing the shares in the American Power & Light Company. The administrator of Mr. Scullin's estate claims under the assignment above described. The administrator with the will annexed of Mrs. Scullin's estate insists that there was never a valid delivery of the assignment or stock certificate and that therefore the American Power & Light stock is a part of the Genevieve Taylor Scullin estate.

The assignment was executed at the First National Bank of Butte on a standard printed form. It was dated March 5, 1948, signed at the bottom by Genevieve Taylor. Mr. John J. Mitchell, an employee of the bank, signed the instrument in the space provided under the words on the form "Signed, Sealed and Delivered in the presence of." Then followed "Signature guaranteed First National Bank, Butte, Montana" signed by I. W. Bolitho, cashier.

Mr. Mitchell was called as a witness for the defendants and testified that he had signed on the line following the words "Signed, Sealed and Delivered in the presence of" under the impression that he was witnessing Genevieve Taylor's signature. Mr. Mitchell testified that he knew Genevieve Taylor and was familiar with her signature and that he knew who John J. Scullin was, knew him by sight and that when he signed Mr. Scullin was not present nor had Genevieve Taylor signed the instrument in his presence. Mitchell was unshaken in his reiterated

statement that when he signed he thought he was witnessing Genevieve Taylor's signature. He repeated on cross-examination that he didn't see the actual delivery of the assignment, that he didn't remember Mr. Scullin being present and that the instrument was not signed in his presence.

Transfer of stock certificates is controlled by R. C. M. 1947, sections 15-628 to 15-651, the Montana enactment of the Uniform Stock Transfer Act, which has been adopted in the 48 states and in the District of Columbia and in the territories of Alaska and Hawaii. 6 Uniform Laws Ann., 1950, Cumulative Pocket Part.

R. C. M. 1947, sec. 15-628, provides the means by which title to certificates and shares of stock may be transferred. "Title to a certificate and to the shares represented thereby can be transferred only,

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person * * *."

In section 15-649, definitions of the words used in the balance of the Act appear. This section provides that: "'Delivery' means voluntary transfer of possession from one person to another." "'Transfer' means transfer of legal title." "'Title' means legal title and does not include a merely equitable or beneficial ownership or interest."

The purpose of the Uniform Stock Transfer Act is to make the stock certificate to the fullest extent possible the representative of the shares. Commissioner's Note, 6 Uniform L᷾ ᵥs Ann. 2; Mills v. Jacobs, 333 Pa. 231, 4 A. (2d) 152, 122 A. J ᴸ.

333; Hodes v. Hodes, 176 Or. 102, 155 Pac. (2d) 564; Knight v. Shutz, 141 Ohio St. 267, 47 N. E. (2d) 886, 150 A. L. R. 138.

Most of the evidence in the instant case relates to the delivery of the separate assignment. The plaintiff relies on the declaration on the instrument that it was signed, sealed and delivered in the presence of John J. Mitchell. The defendant asserts that Mitchell's evidence shows that he signed that statement under the mistaken belief that he was witnessing Genevieve Taylor's signature with which he was familiar.

Equally important is the question of delivery of the certificate itself. If a separate assignment is executed, the Uniform Stock Transfer Act requires not only that the separate assignment be delivered to the transferee but that the stock certificate also be delivered. There is no evidence in the record whatsoever relative to the delivery of the certificate. It was found in the safety deposit box that was used by both Mr. and Mrs. Scullin along with other papers belonging to each of them. Irrespective of the fact that John J. Mitchell signed a statement that the assignment was signed, sealed and delivered in his presence, his testimony that he did not see Mr. Scullin on the day the assignment was executed, that he did not see Mrs. Scullin sign the assignment, and that he did not see the stock certificate, is unimpeached.

The presence of the certificate in the safety deposit box along with other papers belonging to the parties is as consistent with the ownership and possession of Mrs. Scullin as with that of her husband. Therefore, even though Mr. Mitchell's testimony relative to the circumstances under which he signed the assignment be disregarded, there is still insufficient compliance with the statute because there is no showing that there was ever any delivery of the stock certificate itself.

In Johnson v. Johnson, 300 Mass. 24, 13 N. E. (2d) 788, an assignment was made and delivered but because the stock certificate itself was never delivered, it was held that the transfer was ineffective. Figuers v. Sherrell, 181 Tenn. 87, 178 S. W. (2d) 629, 152 A. L. R. 420; Daws v. Drusilla Home, 118 Ind.

App. 639, 79 N. E. (2d) 420; Cross v. Cross, 27 A. (2d) 877, 20 N. J. Misc. 359; In re Cunningham's Estate, 19 Wash. (2d) 589, 143 Pac. (2d) 852; Parker v. Colonial Building-Loan Ass'n, 111 N. J. Eq. 49, 161 A. 353.

The same is true when a certificate is endorsed in blank and never delivered; upon the death of the holder of the certificate his representative is entitled to the stock. Gray v. Doubikin, 188 Mo. App. 667, 176 S. W. 514; Biehl v. Biehl's Adm'x, 263 Ky. 710, 93 S. W. (2d) 836; In re Brueck's Estate, 122 N. J. Eq. 329, 194 A. 60.

In 99 A. L. R. 1077 and 152 A. L. R. 427, there are annotations on the necessity of delivery of stock certificate to complete valid gift of stock and the general rule is stated: "The Uniform Stock Transfer Act, as stated in the earlier annotation, requires as essential to the transfer of title to stock, the delivery of the certificate properly indorsed, or the delivery of the certificate and a separate written assignment or power of attorney." 152 A. L. R. 435.

In Re Brown's Estate (State v. Pelletier), 122 Mont. 451, 206 Pac. (2d) 816, 820, a tax case, this court held that as between parties such as parent and child or husband and wife, a strict enforcement of the rules requiring delivery is required, and that the "donor must go as far as the nature of the property and the circumstances reasonably permit in parting with dominion and making the gift irrevocable." Quoting from Weil v. Com'r of Internal Revenue, 5 Cir., 82 F. (2d) 561, 563. So that "Where actual manual delivery of the property is possible, delivery should be so made."

The burden of establishing the fact of a gift is on the donee, and a gift will not be presumed. State v. Pelletier, supra, and cases therein cited.

It is true that State v. Pelletier was a tax case, but as pointed out by Modesitt, Application of the Uniform Stock Transfer Act to Gifts of Stock, 20 Rocky Mountain Law Review 67, in tax cases the issue of ownership is decided as incidental to the deter-

mination of the incidence of the tax. Such cases do not bear the label "good in tax cases only."

The requirement of delivery has been criticized as a ritualistic relic of medievalism that no longer serves a purpose in modern law. But even those who insist on a relaxation of the formalism required recognize that the fact of delivery must be proved by competent evidence. Richardson v. Commissioner of Internal Revenue, (2d) Cir., 126 F. (2d) 562, 140 A. L. R. 705.

An example of a case where sufficient delivery was shown by surrounding circumstances is United States v. Rosebush, D. C., 45 F. Supp. 664, where a husband transferred certain stock to his wife by endorsing it in blank. The certificate was found in her stock portfolio in their joint safety deposit box. Each of the parties kept a record of their stock holdings and entries were made in their individual journals relating the transfer. There the surrounding circumstances proved the transfer.

But here there is a complete lack of evidence that the stock certificate was ever delivered with or without the separate assignment.

Mr. Modesitt in his article in 20 Rocky Mountain Law Review, supra, states the problem: "* * * many alleged gifts of corporate stock have been held invalid by the courts because there was no delivery or no indorsement in compliance with the express provision of the Act. Often, this is the result of negligence, but more frequently is brought about by various altruistic plans of the donor or by 'hedging' on the unequivocal requisites of the Act. The donor thinks it is easy to give stock away and also retain dominion over it at the same time.

"Probably the most common reason for these gifts is to prevent the corporate shares from being tied up in prolonged probate procedure. Coupled with this, in many cases, is an attempt to avoid an estate tax.

"An attorney advises his client of the advantages of a direct transfer to the beneficiaries through the medium of a gift *inter vivos* and the client agrees; but still he hesitates to give up the

stock irrevocably. He therefore employs a variety of hedging arrangements. He may indorse the certificate in blank and place it in a safety deposit box to which he and the donee have access, or he may have a new certificate issued in the donee's name and keep it in his own desk. His intention, in either case, is to retain dominion over the shares until his death or some indefinite future time. He is actually attempting to make a conditional gift *inter vivos* but there is no such thing.''.

Whatever may have been the motives of the parties (and there is no tax question in the case) there remains the fact that they had put themselves in an equivocal position. The stock certificate was in the name of Mrs. Scullin, the assignment was made to Mr. Scullin, and the stock certificate was equally accessible to both. There is no explanation as to why the certificate was not delivered with the assignment or why it was not endorsed over to the transferee. There simply was a failure to prove an essential element that the plaintiff had the statutory burden of proving, namely, that the stock certificate was ever delivered to the transferee. There was not the irrevocable relinquishment of dominion and control necessary. State v. Pelletier, supra, and cases therein cited; In re Scherzinger's Estate, 272 App. Div. 722, 74 N. Y. S. (2d) 756; Zoller v. State Board of Tax Appeals, 124 N. J. L. 376, 11 A. (2d) 833.

The judgment is reversed and the cause remanded with instructions to dismiss the action.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.