ESTATE OF HELLER: STATE and another, Appellants, vs. HELLER, Executrix, Respondent.

*January 10—February 7, 1933.*

For the appellants there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, *Neil Conway,* inheritance tax counsel, and *Albert B. Houghton,* public

administrator for Milwaukee county, and oral argument by *Mr. Seibold* and *Mr. Conway.*

*Arthur Breslauer* of Milwaukee, for the respondent.

NELSON, J.   Prior to the year 1920 Siegfried Heller was engaged in business in the city of Milwaukee as an individual.   In May of that year he incorporated the S. Heller Elevator Company.   The authorized capital stock of said corporation was 1,000 shares of the par value of $100 each.   Mr. Heller assigned and turned over to the corporation all of the assets of his individual business.   For such assets he received 890 shares of stock.   The remainder of the authorized shares were taken by two employees.   Mr. Heller caused 390 shares to be made out in his own name, 300 shares in the name of Caroline Heller, his wife, 100 shares in the name of Leo, and 100 shares in the name of Siegfried, Jr.   Mr. Dite, an accountant who from time to time served Mr. Heller and also the corporation, filled out the stock certificates pursuant to instructions given by Mr. Heller.   They were dated May 15, 1920, and were thereafter signed by Mr. Heller as president and Mr. Freede as secretary of the corporation.   The three certificates made out in the names of Mrs. Heller, Leo, and Siegfried, Jr. were left in the stock certificate book which was kept in the corporation's vault used also by Mr. Heller.   Mr. Freede testified that on the day before Christmas in 1920 Mr. Heller took out the three certificates and took them home with him.   At the first hearing held in September, 1930, Mrs. Heller testified that she didn't see the stock certificates until after Mr. Heller's death.   In response to a question by her attorney as to whether she did not remember that her husband came home one Christmas and gave the stock to her she answered: "That is so long ago."   However, at the hearing held in December, 1931, Mrs. Heller, over the objection of

counsel for the state and county, testified that her husband brought the stock certificates home on Christmas eve in 1920 and gave them to her and to Leo and Siegfried, Jr. Leo testified that for some time after that Christmas he had the possession of a certificate for 100 shares of stock, that he took it to school with him and showed it to some of his friends and then took it down to the office where it was thereafter kept in the vault.

In 1921 the authorized capital stock of the corporation was increased to $200,000 and a stock dividend of thirty-six per cent. on the capital stock was declared. Three hundred and sixty shares of stock were issued as stock dividends. A certificate for 320 shares which represented a thirty-six per cent. dividend on all of the 890 shares standing in the names of Mr. Heller and the three other members of his family was issued to Mr. Heller. So far as this stock dividend is concerned Mr. Heller was treated by the corporation, of which he was the controlling and dominating figure, as the owner of 890 shares of stock. The accountant also testified that he made out the stock dividend certificates in the name of Mr. Heller pursuant to his request. Contemporaneously with the issuing of the stock dividend mentioned the two employee stockholders were permitted to purchase 140 shares of stock for $14,000. After this there remained 500 shares of authorized stock unissued.

In 1922 a second stock dividend of thirty-three per cent. was declared by the corporation. A certificate for 236 shares was made out in the name of Mr. Heller, which was a thirty-three per cent. dividend on the original 390 shares issued to him, plus the 320 stock dividend shares issued to him in 1921. A certificate for 100 shares was made out in the name of Mrs. Heller and a certificate for thirty-three shares was made out in the name of each of the boys. The accountant wrote out all of those certificates at the request

of Mr. Heller. They were all left in the stock book. No cash dividends were declared by the corporation prior to Mr. Heller's death.

The stockholders' meetings were very informal and apparently no record thereof was made at the time. The meetings appear to have consisted of conversations between Mr. Heller and the two other stockholder employees. Mr. Heller prepared memoranda concerning the meetings which were handed to Mr. Dite, who wrote up the minutes. Neither Mrs. Heller, nor Leo, nor Siegfried, Jr. ever attended any of the stockholders' meetings. They were never notified of any of the meetings, never gave any proxies or powers of attorney, and never receipted for any stock on the stubs of the stock record book.

Mr. Heller died on February 9, 1924, a resident of Milwaukee county, leaving a last will and testament which was thereafter admitted to probate in which Caroline Heller was nominated as executrix. The estate was duly probated and the inheritance tax determined. The inventory listed 946 shares of the capital stock of the S. Heller Elevator Company. In the inheritance tax proceedings the 500 shares of stock made out in the names of Mrs. Heller and the two boys were listed as gifts "made within six years prior to the death of the . . . donor" and were taxed pursuant to the provisions of sec. 72.01 (3), Stats. 1923. The inheritance taxes were paid under protest. Thereafter sec. 72.01, sub. (3), was declared unconstitutional by the supreme court of the United States in *Schlesinger v. State of Wisconsin,* 270 U. S. 230, 46 Sup. Ct. 260, 70 Lawy. Ed. 557. In 1929 the legislature enacted ch. 365, now sec. 72.26, which permitted refunds of taxes paid under that part of sub. (3) of sec. 72.01 declared unconstitutional and void, upon verified petition setting forth the necessary facts and a showing that the gift involved was not made in actual contemplation of death of the donor or was not intended to

take effect in possession or enjoyment at or after death. Sec. 72.26 (4).

At the conclusion of the hearing herein the county court made its findings of fact which were in part as follows:

"2. That no consideration was ever paid or given by either of said parties to Siegfried Heller for said stock.

"3. That all dividends declared on said stock were kept by said Siegfried Heller, and that Siegfried Heller continued to vote said stock at all meetings of the company thereafter.

"4. That neither Caroline Heller, Leo Heller, nor Siegfried Heller, Jr., ever attended any corporate meetings of the S. Heller Elevator Company, and none of said persons ever voted any of said shares of stock or ever executed any proxies therefor.

"5. That no receipts were ever signed by Caroline Heller, Leo Heller, and Siegfried Heller, Jr., either on the books of such company for such stock certificates or otherwise.

"6. That said stock was never delivered by said Siegfried Heller to the said Caroline Heller, Leo Heller, and Siegfried Heller, Jr., or either of them, but that said stock was kept by Siegfried Heller in his possession up until the time of his death, and he exercised all the rights of ownership therein during his lifetime."

The court found as conclusions of law:

"1. That there was no delivery of such stock or certificates by the said deceased in his lifetime to any of (the) persons named in said certificates.

"2. That the ownership of said stock by such transfers was vested in Caroline Heller, Leo Heller, and Siegfried Heller, Jr."

The court further found that the petitioners were entitled to an order directing a refund of the inheritance taxes paid amounting to $3,362.14, which amount included the inheritance tax assessed against certain stock listed in the inventory which was in the name of said deceased but which the petitioners asserted should have been issued to them.

The first contention of appellants is that the findings of fact do not support the conclusions of law. It is quite apparent that they do not unless it may be said that the ownership of said stock vested in Caroline Heller, Leo Heller, and Siegfried Heller, Jr., by virtue of the fact that at the time the stock book was being made up Mr. Heller instructed Mr. Dite to make out the said certificates in the names of Mrs. Heller and the two boys. The court deemed the testimony tending to show an actual delivery incredible and so found. The court evidently concluded that when Mr. Heller instructed Mr. Dite to make out the certificates in the names of his wife and two boys, that was sufficient to complete the gifts without actual deliveries of the certificates to the persons named therein, basing his conclusions on the proposition that the legal title to the shares of stock passes to the transferee by transfer on the books of the company irrespective of whether or not the stock certificates are delivered to the transferee.

Numerous cases are cited by counsel relating to the effect of mere transfers of stock on the books of corporations. Some of the cases hold that a change of title is effected simply by transferring stock on the books of a corporation even though the transferor retains the certificates in his possession and does not deliver them to the transferee. *Roberts' Appeal,* 85 Pa. St. 84; *Chicago Title & Trust Co. v. Ward,* 332 Ill. 126, 163 N. E. 319; *Barnhouse v. Dewey,* 83 Kan. 12, 109 Pac. 1081; *Thomas v. Thomas,* 70 Colo. 29, 197 Pac. 243. Other cases hold that until the certificate, reissued in the name of the transferee, is actually delivered to him by the transferor, the transferee merely has nominal title to the certificate issued in his name and the transfer on the books of the corporation is ineffectual to perfect a gift where the donor retains the certificate, unless he constitutes himself a trustee for the donee. *Swan v. Swan's Ex'rs* (1923) 136 Va. 496, 117 S. E. 858; *Casteel v. Flint* (1900)

112 Iowa, 92, 83 N. W. 796; *Getchell v. Biddeford Sav. Bank* (1900) 94 Me. 452, 47 Atl. 895; *Cummings v. Bramhall* (1876) 120 Mass. 552, 563, 564; *Jones v. Jones* (Mo. App. 1918) 201 S. W. 557; *Jackson v. Twenty-third St. R. Co.* (1882) 88 N. Y. 520, 526; *Besson v. Stevens* (1923) 94 N. J. Eq. 549, 120 Atl. 640. However, we do not think the facts herein show a transfer of stock as that term is generally understood.

If the present proceeding involved a transfer of stock issued to Mr. Heller and delivered by him to the corporation for transfer and reissue to the members of his family without delivery of such certificate to the transferees, we would have to hold that sec. 183.01, Stats., is controlling. That section provides among other things as follows:

"Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person."

In the present case we have a situation where the alleged donor was the sole owner of a successful business which he conducted as an individual. He transferred all of his individual business assets to a corporation formed by him. Pursuant to his instructions stock was issued in his name and certain stock certificates were made out in the names of his wife and sons. The latter certificates, as found by the court, were never delivered to the persons named therein but were retained either in the possession of the corpora-

tion or in the dual possession of the corporation and Mr. Heller. After the corporation was organized Mr. Heller continued to dominate it to all intents and purposes as though it were still his individual business. The affairs of the corporation so far as the meetings of its board of directors and its stockholders were concerned were conducted most informally. Mr. Heller, by voting all of the stock standing in the names of the members of his family, certainly exercised the control as owner of it. Under such circumstances, where no actual delivery of the certificates was made to the members of his family, where they neither exercised nor were called upon to exercise any rights as stockholders, we find no evidence which supports the contention of the respondent that there was a constructive delivery of this stock. Just why the court concluded that the title to this stock vested in Mrs. Heller and the sons does not appear. We can only surmise that the court reached the conclusion that the mere making out of the certificates in the names of Mrs. Heller and the boys was sufficient to vest title without any delivery, actual or constructive. Since the court found that there was no delivery of the stock, its conclusion of law that ownership of said stock by such transfers was vested in Caroline Heller and the sons is neither supported nor justified by the findings.

As hereinbefore stated, the amended petition also prayed for a refund of certain taxes paid with respect to certain stock which stood in the name of Mr. Heller at the time of his death. It was contended that such stock, assessed at the sum of $23,880, was wrongfully and erroneously issued as a stock dividend to Mr. Heller in 1921 when it should have been issued to Mrs. Heller and the boys as dividends on the stock which they assert had been theretofore given to them. When the said stock was listed in the inventory by Mrs. Heller as executrix, no objection to such inclusion was made by any one. No objection to its inclusion as a

part of the taxable estate was made at the time of the determination of the inheritance tax. However, if it did appear that such stock was erroneously taxed to the estate, such error could not be corrected long after the time for appeal had expired and certainly not by a petition made pursuant to the provisions of sec. 72.26, which relates to refunds of taxes paid on gifts made within six years and unconstitutionally taxed. The court did not find that the petitioners were entitled to a refund of the taxes paid on such stock but no doubt inadvertently ordered a refund which included said taxes.

*By the Court.*—Order reversed, with directions to dismiss the petition.