ESTATE OF DUWE: DUWE, Administrator, Appellant, vs.
WOELFFER, Respondent.

*September 15—October 11, 1938.*

For the appellant there was a brief by *Kading & Kading* of Watertown, and oral argument by *Charles E. Kading.*

For the respondent there was a brief by *Rogers & Vance* of Fort Atkinson, and oral argument by *Charles B. Rogers.*

FRITZ, J.   The controversy on this appeal is in relation to the ownership of fifty-one shares of corporate stock, which were the property of Augusta Duwe on and prior to March 24, 1932, but which after her death on June 5, 1935, were not inventoried as part of her estate by William Duwe, who was appointed administrator.   He claimed that by Augusta Duwe's assignment and delivery of the stock on March 24, 1932, the shares had become the property of himself, a brother, and two sisters.   It appears without dispute that upon each certificate of the stock Augusta Duwe, on March 24, 1932, signed an assignment thereof to William Duwe, but that there was no transfer recorded on the corporation's books until September 3, 1935, when William Duwe presented the certificates to the corporation with the request that it record transfers thereof as follows: Twenty shares to his brother Herman, eleven shares to a sister Martha Woelffer, and ten shares, respectively, to himself and a sister Emma Hell.   Before recording such transfers the corporation had William Duwe, in his individual capacity and also as administrator, execute assignments to each of those persons for the respective number of shares stated by him.   Augusta Duwe received the dividends declared up to the time of her death, but William Duwe did not account, as administrator, for the dividends paid thereafter.

The trial court filed an opinion stating "that the deceased attempted to make a gift *inter vivos,* and failed to comply with two principles of law necessary to carry out such inten-

tion." In explanation thereof the court informed the attorneys in writing that,—

". . . the transfer of the fifty-one shares of stock was an incompleted attempt to make a gift *inter vivos* for the reason that the donor didn't intend to relinquish and did not relinquish the right of dominion over the stock until after her death. The testimony is that subsequent to the assignment she received all of the dividends of said stock. Secondly, the gift was not completed because there was no delivery to the donee, with the possible exception of William. As I understand the testimony, none of the other donees knew of the assignment. I hold further that William was the agent of the donor."

In its findings the court said,—

"The testimony further fails to show that the other three to whom the stock was transferred were advised of the transaction, William therefore could not have been acting as their agent, and the court so finds. . . . The claim is made that it was a gift *inter vivos*. But there is no evidence that Augusta Duwe actually parted with possession of the stock certificates; they were not delivered to or accepted by the donees, nor to any agent for the donees, and I so find. At the most, and taking the Mulgrew testimony as fact, this was an incompleted attempt to make a gift *inter vivos,* which failed because the donor did not relinquish her dominion, did not make delivery to the donees, nor to anyone for them, and there was no acceptance either constructive or actual by the donees, and I so find. I find that the transaction alleged to have taken place on March 24, 1932, was not disclosed to the contestant nor to the other natural heirs and that they were not consulted then or thereafter concerning the same."

Thus it appears that the court's decision was based on virtually two grounds, to wit: 1st, that there was no such delivery and acceptance of the stock as is necessary to effect a valid assignment or gift *inter vivos,* because the court considered it necessary, as a matter of law, for each of the intended donees to be present and receive and accept delivery

in person, or to have been advised of the transaction in order to have William Duwe considered as acting as their agent therein; and 2d, that because the deceased had continued to receive the dividends paid up to the time of her death she had not intended to and did not relinquish the right of dominion over the stock until after her death.

The only competent testimony as to the transaction was that of J. W. Mulgrew, a disinterested person, whose testimony was uncontradicted and unimpeached. He testified that on March 24, 1932, the deceased, in the presence of himself and William Duwe, assigned the fifty-one shares by an assignment, prepared and witnessed by Mulgrew; and in addition answered questions as follows:

"*Q*. Then the certificate or certificates were delivered to whom? *A*. To William in consideration of one dollar.

"*Q*. Was the dollar paid? *A*. Right there.

"*Q*. Know whether there was some understanding or further agreement on the part of Mrs. Duwe at the time? . . . *A*. Yes; she told William that she would like to have it divided, this fifty-one shares. She wanted Herman to receive twenty shares and Martha, I remember, was to get eleven shares and Emma ten shares and I think William was to receive ten shares. But there were only four of those shares to be divided.

"*Q*. Was this step taken by her of her own accord? *A*. Yes."

(Cross-examination.)

"*Q*. She didn't give it to William for his own, but only for certain purposes? *A*. She thought it would make it legal and binding. . . .

"*Q*. Did she carry this stock in the house all the time? *A*. Yes, I think so. I'm not sure of that, but she had it there that day.

"*Q*. Did she sign any writing of any kind to indicate what she wanted done with it? *A*. Not that I remember.

"*Q*. In other words it was all just verbal? *A*. No, the assignments weren't.

"*Q*. But the directions were verbal? *A*. Yes."

As there was no contradiction, impeachment, or showing to render Mulgrew's testimony incredible, his unqualified statement that the deceased on March 24, 1932, "delivered" the certificates to William Duwe, in consideration of the dollar then paid, establishes the delivery of the certificates by Augusta Duwe to, and the acceptance thereof by, William Duwe, and a presently effective change of dominion over them in accordance with the then expressed purpose of Augusta Duwe, to divide the fifty-one shares so as to have her daughter Emma and William Duwe each own ten shares, her daughter Martha own eleven shares, and her son Herman own twenty shares. As there is no evidence or basis for any inference to the contrary, the court erred in finding and concluding that there was no completed delivery or acceptance, at least as between Augusta and William Duwe. Upon that delivery and the receipt of the certificates by William Duwe, the transfer was consummated and her ownership and dominion over the stock terminated. Thereupon he held the stock for himself and the specified sisters and brother, even though dividends thereon continued to be paid to the deceased until her death. The assignment and delivery of the certificates were valid and effective on March 24, 1932, even though they were to William Duwe alone, in the absence of his sisters and brother, and he accepted and held the stock in part for himself and in part for them without their knowledge. Under such circumstances, acceptance by a donee may be implied or presumed, especially if it operates entirely to his benefit. As this court said in *Northwestern Mut. Life Ins. Co. v. Wright,* 153 Wis. 252, 255, 140 N. W. 1078,—

"In every transfer of title from one person to another there must be an actual or constructive delivery of the thing or paper title thereto from one to the other, with intention to pass title, and an actual or constructive acceptance, complet-

ing mutuality so as to end dominion on the one side and create it on the other. . . .

"A delivery and acceptance may be good in law and there not be any physical circumstances of change direct from the old to the new one, or even present knowledge on the part of the latter. . . . No particular act on the part of the vendee or assignee is necessary to complete the mutuality, disabling the vendor or assignor from recalling the title he intends to part with. The instrument of transfer may be delivered to a third person, with intention not to recall it, and the transaction be complete, even as indicated, without the new owner having present knowledge thereof. The delivery to the third person and acceptance by him for the purposes of the transaction is a delivery to the new owner,—where such transaction is beneficial to the new owner, the law supplies the rest; acceptance by such new owner is presumed until the contrary is shown,—thus ending the dominion of the old owner and initiating that of the new one."

See also *Streeper v. Myers,* 132 Ohio St. 322, 7 N. E. (2d) 554; *Abegg v. Hirst,* 144 Iowa, 196, 122 N. W. 838, 138 Am. St. Rep. 285; 28 C. J. pp. 640, 641, § 32 (c); 12 R. C. L. p. 934, § 10.

Likewise, the fact that Augusta Duwe continued to receive the dividends on the assigned stock until her death does not militate necessarily against an actual change of title. *McNally v. McAndrew,* 98 Wis. 62, 73 N. W. 315; *Pirie v. Le Saulnier,* 161 Wis. 503, 509, 154 N. W. 993; *Estate of Merrill,* 196 Wis. 351, 353, 220 N. W. 215; *S. C.,* 193 Wis. 84, 213 N. W. 641; *Streeper v. Myers, supra;* 3 A. L. R., annotation p. 906; 60 A. L. R., annotation p. 1056; *Ratterman v. Lodge* (8th Cir.), 13 Fed. (2d) 805.

It follows that the portion of the order which is under review must be reversed, and the objection to the administrator's inventory and account, pursuant to which that portion of the order was made, must be overruled.

*By the Court.*—Order reversed with directions to enter an order overruling the objection to the administrator's inventory and account, as stated in the opinion.