SYLVIA MARANS, Plaintiff and Respondent, v. JOHN NEWLAND and ELMER MESTER, as Executors of the Estate of EMIL MARANS, Deceased, Defendants and Respondents, HOWARD MARANS and DONALEE MAR-ANS LESSUK, Defendants and Appellants, J. F. REID, E. J. BYRNE and W. J. WINTERS, as members of and constituting the State Board of Equalization of the State of Montana, Defendants and Respondents.

No. 10251.

Submitted November 6, 1961. Decided September 14, 1962.

Rehearing denied October 10, 1962.

374 P.2d 721.

Francis P. Kelly (argued orally), Poore, Poore & McKenzie and Robert A. Poore (argued orally), Butte, for appellants.

Corette, Smith & Dean, Meyer & Meyer, Butte, Sidney O. Smith (argued orally), Helena, Kendrick Smith (argued orally), Butte, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is a declaratory judgment action brought by Sylvia Marans as plaintiff against the executors of her deceased husband's estate, his two children by a prior marriage, and the State Board of Equalization. From the judgment entered the two children have appealed.

Emil Marans, the deceased husband, in his lifetime operated a store in Butte, Montana. He had been previously married and his first wife died in 1947. They were the parents of two children, Donalee, born July 18, 1932, and Howard, born May 14, 1936. In 1949 Marans married Sylvia, the plaintiff in this cause. Between 1949 and 1958 Marans purchased stock in various corporations from his own funds and title was taken as to some stocks in the names of Marans and his son Howard as joint tenants with the right of survivorship; others in the names of

Marans and his daughter Donalee as joint tenants with the right of survivorship; others in the names of Marans and both of his children as joint tenants with the right of survivorship; some in the names of Donalee and Howard as tenants in common; and some in the name of Howard alone.

Emil Marans died testate on September 21, 1958, and his will was admitted to probate. Except for certain bequests his estate was divided equally between his widow, the plaintiff, and his children, one-third to each. Thereafter Sylvia renounced her rights under the will, and then filed this declaratory judgment action seeking to have the stocks in the ownerships as before mentioned included in the residuary estate of her late husband. Following a trial before the court, sitting without a jury, the court held, with certain exceptions not here pertinent, that the stocks belonged to Emil Marans at the time of his death and became part of his estate.

The children prosecute this appeal and specify that the law and evidence will not support the findings and conclusions of the court that as to the jointly issued stocks there was no transfer of ownership from Marans to his children as joint tenants with himself, with right of survivorship and not as tenants in common; and that the court was in error in so concluding. Secondly, that as to the stocks issued in the name of the son and those in the names of the son and daughter as tenants in common, that the law and evidence do not support the finding and conclusion of the court that there was no gift, delivery and transfer of ownership from Marans to his children, the registered owners of the stocks.

Turning then to the stocks issued in the names of Marans and his children as joint tenants with the right of survivorship and not as tenants in common. Joint tenancy is recognized under our law by section 67-308, R.C.M.1947, which reads:

"A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint

tenancy, or when granted or devised to executors or trustees as joint tenants."

This court fully discussed the incidents of joint tenancy in Hennigh v. Hennigh, 131 Mont. 372, 377, 309 P.2d 1022, 1025, and therein we stated:

"After adoption of present sections 67-307 and 67-308, R.C.M.1947, in 1895, all the incidents of joint tenancy that existed under the common law unless in derogation of these enactments would come into force. These incidents at common law were a single estate in property, real or personal, owned by two or more persons, under one instrument or act of the parties, an equal right in all to share in the enjoyment during their lives, and on the death of a joint tenant, the property descends to the survivor or survivors and at length to the last survivor."

As provided in section 67-1706, R.C.M.1947:

"A gift is a transfer of personal property, made voluntarily, and without consideration."

And under section 67-1707, R.C.M.1947:

"A verbal gift is not valid unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee."

It is the contention of the respondent that there has been no delivery, accompanying intent, or acceptance by the donee to constitute a gift *inter vivos* under our law.

It appears therefore that a review of Montana authorities should be had and we will briefly discuss the various cases which have arisen concerning gifts.

In the early case of Leyson v. Davis, 17 Mont. 220, 294, 42 P. 775, 796, 31 L.R.A. 429, decided in 1895, this court made an observation which we feel justified in repeating:

"* * * we believe in adhering to the rule that, where a party claims by way of a donation *causa mortis*, he should make out a strong case. It is therefore the duty of the

court to give particular heed to every fact and circumstance in the testimony, being very careful to avoid any conclusion not fully sustained by credible evidence. *On the other hand, there is a cardinal principle never to be lost sight of, namely, that the law permits a man to make gifts in apprehension of his death; and if he has done so in due manner, while in full possession of his senses, and with deliberation and intent to bestow his personal property upon another, it would be a fearful injustice to nullify that intent, and take away the property from the person justly entitled thereto.*" (Emphasis supplied.)

In O'Neil v. O'Neil, 43 Mont. 505, 511, 117 P. 889, 890, in referring to the statute, then section 4635, Rev.Codes 1907, now section 67-1706, R.C.M.1947, this court observed:

"* * * to constitute a gift *inter vivos,* within the statute, the donor must voluntarily deliver the subject of the gift to the donee with the present intention to vest the legal title in the donee, who must accept it. The essential elements are, therefore, the delivery, the accompanying intent, and acceptance by the donee. Such a gift is made without condition, and becomes at once irrevocable."

In Clary v. Fleming, 60 Mont. 246, 250-252, 198 P. 546, 547, our court laid down the rule with regard to transfers between persons in confidential relation, in these words:

"* * * if the property is purchased by one with his own money, and the title is placed by him in another to whom he stands in a confidential relation, such as husband, wife, parent, child, or such other relation that one may naturally have a claim upon the bounty of the other, then the presumption is that the conveyance is made as a gift. Taylor v. Miles, 19 Or. 550, 25 Pac. 143; Hamilton v. Hubbard, 134 Cal. 603, 65 Pac. 321, 66 860, 51 Am.Dec. note 754, 755; Whitten v. Whitten, 70 W.Va. 422, 74 S.E. 237, 39 L.R.A.(N.S.) [1026] 1028, Ann.Cas.1915D, 647. See, also, numerous citations in Lafayette Street Church Society of

Buffalo v. Norton, 202 N.Y. 379, 95 N.E. 819, 39 L.R.A. (N.S.) 906. The Supreme Court of Oregon, in the case of Taylor v. Miles, supra, considering a similar question, uses this language: 'But the presumption that the party paying for the property intended it for his own benefit applies only when the transaction is between strangers, where there is no natural or legal obligation resting on the purchaser to pay the consideration for another. When the purchaser takes the conveyance in the name of his wife, the sale [rule?] is reversed, and equity raises the presumption that the purchase and conveyance was intended to be an advancement or gift. "Whenever," says Mr. Pomeroy, "the real purchaser—the one who pays the price—is under a legal or even a moral obligation to maintain the person in whose name the purchase is made, equity raises the presumption that the purchase is intended as an advancement or gift, and no trust results." 2 Pom.Eq.Jur., par. 1039.'

"The Supreme Court of California, from which state our statute was taken, in the case of Hamilton v. Hubbard, supra, has given a similar construction to the statute in the following language: 'Ordinarily, indeed, where a conveyance is made to one, and the consideration paid by another, a trust is "presumed" in favor of the latter. Civ.Code, § 853. But this presumption arises only in transactions between "strangers to each other" (1 Perry [on], Trusts, § 126), and is not indulged where the conveyance is to the "wife or child, or other person, for whom (the person paying the consideration) is under some natural, moral, or legal obligation to provide." In such cases the presumption is "that the purchase and conveyance were intended to be an advancement for the nominal purchaser." 1 Perry, [on] Trusts, § 143; Hill, [on], Trustees, 97, and note. The transaction was therefore a gift to Mrs. Hamilton, and, under the express provisions of the Code, her

separate property. Civ.Code, § 162.' There are some California cases holding that in certain instances this statute is applicable to dealings between husband and wife, parent and child, but in each of those cases there appears a breach of confidence or trust whereby a trust *ex maleficio* results; but we are unable to find any case in which a resulting trust is presumed when a husband voluntarily takes the title in the name of his wife and there has been no breach of faith on her part.

"While in such cases the presumption is that the conveyance was intended as a gift, yet it is a rebuttable presumption. In this case, however, there is nothing to rebut this presumption, as the record is entirely devoid of any evidence whatever showing that there was any understanding or agreement between defendant and his wife that the conveyance should not be deemed a gift."

Nelson v. Wilson, 81 Mont. 560, 264 P. 679, affirmed the holding in the O'Neil case, supra. Fender v. Foust, 82 Mont. 73, 265 P. 15, while a case dealing with a gift *causa mortis*, quoted with approval the language of the O'Neil case.

Sylvain v. Page, 84 Mont. 424, 439-441, 276 P. 16, 20, 63 A.L.R. 528, again reaffirmed the doctrine of the O'Neil case. This was an action by the administratrix of the estate of John Page joined with a daughter of the decedent Page to cancel a deed and bill of sale executed by the decedent to the defendant on April 30, 1920, when defendant was the wife of decedent, and to have defendant declared an involuntary trustee of the property covered by the instruments, as well as other personal property, and for an accounting. After a discussion of the evidence and law relative to delivery of the instruments, this court then stated:

"Plaintiffs say there was no consideration for the transfer. There being a written instrument, consideration is presumed (Id. § 7512), and no evidence was introduced by plaintiffs on that issue. But let us suppose there was none.

A gift is a transfer of personal property, made voluntarily and without consideration. Id. § 6882. 'To constitute a gift *inter vivos,* within the statute, the donor must voluntarily deliver the subject of the gift to the donee, with the present intention to vest the legal title in the donee, who must accept it. The essential elements are therefore: the delivery, the accompanying intent, and acceptance by the donee. Such a gift is made without condition, and becomes at once irrevocable.' O'Neil v. O'Neil, 43 Mont. 505, 117 P. 889, Ann.Cas.1912C, 268; Fender v. Foust, 82 Mont. 73, 265 P. 15. 'A gift, other than in view of death, cannot be revoked by the giver.' Section 6884, Rev.Codes 1921 [now R.C.M.1947, § 67-1708].

"Under identical statutes the Supreme Court of California has held 'that, as between the donor and the donee, it is not necessary to the validity of a gift *inter vivos,* if made by a written instrument transferring the title to the donee, that the possession of the thing given be passed to the donee.' Burkett v. Doty, 176 Cal. 89, 167 P. 518; Driscoll v. Driscoll, 143 Cal. 528, 77 P. 471; Francoeur v. Beatty, 170 Cal. 740, 151 P. 123; Stone v. Greene, 181 Cal. 569, 185 P. 670. While a verbal gift is not valid, unless there is actual or symbolical delivery to the donee of the thing given (section 6883, Rev.Codes 1921 [now R.C.M.1947, § 67-1707], this rule has no application when the gift is effected by an instrument in writing. Francoeur v. Beatty, supra; Driscoll v. Driscoll, supra. A sale of personal property is good between the parties, whether possession be delivered or not; want of delivery renders it void only as to creditors and subsequent bona fide purchasers and encumbrancers. O. W. Perry Co. v. Mullen, 81 Mont. 482, 263 P. 976, 56 A.L.R. 514. The same is true with respect to a gift from husband to wife. Driscoll v. Driscoll, supra; Francoeur v. Beatty, supra.

"In this case there are neither creditors, subsequent

purchasers, nor encumbrancers. The plaintiffs stand in the shoes of the decedent. What would be good as to him must be held valid as to them. In addition, defendant testified that, after her husband delivered the bill of sale to her, he handed to her all the jewelry he possessed—the diamond ring, a pair of cuff buttons, and a watch and chain. There is no testimony to the contrary, save such inferences as may be drawn from the alleged admissions of defendant, which, in this case, are not sufficient to enable the plaintiffs to prevail. Conceding that the decedent has possession of the jewelry at times after the bill of sale was delivered, the result is the same. Driscoll v. Driscoll, supra; Burkett v. Doty, supra.

"Counsel for plaintiffs stress the improbability of Page's intention practically to disinherit his only daughter, of whom he was fond. The motives which impelled him to make, execute, and deliver to his wife the deed and bill of sale are not for us to explain; he did so. While his action may appear strange, he was privileged to do as he pleased with his own property, if in so doing he did not interfere with the rights of another."

Lyons v. Freshman, 124 Mont. 485, 491, 492, 226 P.2d 775, 778, 23 A.L.R.2d 1165, was an action between the administrator of a deceased husband against the administrator with will annexed of a deceased wife to recover a stock certificate covering shares in a corporation. Both husband and wife had been killed in an automobile accident. The stock originally had been owned by the wife prior to her marriage, and after her marriage she executed on a separate instrument an assignment purporting to transfer the stock to her husband, but she continued to receive the income therefrom. Following their deaths the endorsed stock certificate and the assignment were found in a bank safety deposit box held jointly by them to which both had access. The decision of our court was based upon the Uniform Stock Transfer Act, Sections 15-628 to 15-651, R.C.M.

1947. Our court held that there was no evidence whatever disclosing delivery of the stock certificate. *Our court did not hold that there was insufficient delivery of the assignment.* As stated in the opinion:

"But here there is a complete lack of evidence that the stock certificate was ever delivered with or without the separate assignment."

In summing up the matter the court stated:

"Whatever may have been the motives of the parties (and there is no tax question in the case) there remains the fact that they had put themselves in an equivocal position. The stock certificate was in the name of Mrs. Scullin, the assignment was made to Mr. Scullin, and the stock certificate was equally accessible to both. There is no explanation as to why the certificate was not delivered with the assignment or why it was not endorsed over to the transferee. There simply was a failure to prove an essential element that the plaintiff had the statutory burden of proving, namely, that the stock certificate was ever delivered to the transferee. There was not the irrevocable relinquishment of dominion and control necessary. In re Brown's Estate, 122 Mont. 451, 206 P.2d 816, supra, and cases therein cited; In re Scherzinger's Estate, 272 App. Div. 722, 74 N.Y.S.2d 756; Zoller v. State Board of Tax Appeals, 124 N.J.L. 376, 11 A.2d 833."

These cases outline the general law of Montana in actions wherein actual title to the property was involved. We have another group of cases which involved determination of inheritance taxes and we will discuss them.

Before proceeding to such discussion it should be noted that it is not section 67-308, R.C.M.1947, supra, defining joint tenancy that is in question in such cases. To the contrary it is the former section 10400.1, R.C.M.1935, and in particular section 91-4402, R.C.M.1947, (formerly § 10400.1, subd. (3), R.C.M.

42

1935) and section 91-4405, R.C.M.1947, (formerly section 10400.1, subd. (6), R.C.M.1935), which read:

"91-4402. [§ 10400.1 subd. (3), R.C.M.1935] *Transfer in contemplation of death.* When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within the state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift, made within three years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without a fair consideration in money or money's worth shall, unless shown to the contrary be deemed to have been made in contemplation of death within the meaning of this section."

"91-4405. [§ 10400.1 subd. (6), R.C.M.1935], *Joint estates.* Whenever any property, real or personal, is held in the joint names of two or more persons, or as tenants by the entirety, or is deposited in banks or other institutions or depositaries in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons, the right of the surviving tenant by the entirety, joint tenant, or joint tenants, person or persons, to the immediate ownership or possession of such property shall be deemed a transfer of one-half or other proper fraction thereof as though the property to which such transfer relates belonged to the tenants by the entirety, joint tenants, or joint depositors as tenants in common, and had been bequeathed or devised to the surviving tenant by the entirety, joint tenant, or joint tenants, person or persons, by such deceased tenant by the entirety, joint tenant, or joint depositor, by will, except such part

thereof as may be shown to have originally belonged to the survivor and never to have belonged to the decedent.''

In re Wadsworth's Estate, 92 Mont. 135, 11 P.2d 788, which involved determination of inheritance tax upon a declaration of trust, held that gifts *inter vivos* were subject to tax.

In State Board of Equalization v. Cole, 122 Mont. 9, 15, 17, 24, 195 P.2d 989, 992, 993, 997, the decedent had five joint bank accounts all created within three years prior to her death, and a number of U. S. Savings Bonds held in the names of herself and other persons as alternate payees. The sole question before the court was whether the state was entitled to an inheritance tax upon the full amount of the joint bank accounts and upon the full market value of the bonds, or only upon one-half of such amounts by virtue of our statute, supra.

This court held, with regard to the joint bank accounts, that if they were to be regarded as gifts they would have to satisfy all the requirements of a valid gift *inter vivos* on the authority of Nelson v. Wilson, supra, and Fender v. Foust, supra.

As to the question of the intention of the parties making the deposit, our court held that where such intention was evidenced by a written agreement the question of intention ceased to be an issue and the courts are bound by the agreement, and stated:

''In this jurisdiction the signing of the signature card containing an agreement that the deposit was payable to either of the co-depositors or the survivor settled the question of the donative intent of the donor to make a gift in joint tenancy. See In re Sullivan's Estate, 112 Mont. 519, 118 P.2d 383.''

As to the question of delivery, our court discussed whether or not the creation of a joint bank account constituted a complete relinquishment of the donor's dominion over the subject of the gift and, after quoting many authorities, held that there was nothing contingent about the gift, and it was absolute

44

even though were the donor to withdraw the whole deposit the gift might prove valueless. Our court then stated:

"Here then was a completed gift transferring an interest in the deposit to the donee. The transfer was made within three years immediately preceding the death of the donor. In the absence of a showing to the contrary this is a transfer in contemplation of death. (Subsec. 3, sec. 10400.1, Rev. Codes of Montana 1935 [now R.C.M. 1947, § 91-4402].)"

As to the U. S. Savings Bonds, they were all purchased by the decedent and were payable to decedent or in the alternative to one of her children. Decedent received the bonds when they were issued and kept them in her safety deposit box, and none of the alternative payees ever had access to this safety deposit box or ever attempted to exercise any control over the bonds. Since the only question was whether or not they were jointly owned, the court disposed of that feature by holding that they were not jointly owned since the ownership clause was in the alternative, being decedent or one of her children. Our court then stated:

"The bonds then were the property of the decedent so long as she retained them in her possession. They constituted a transfer of personal property without consideration intended to take effect in possession or enjoyment of the named donees at or after the death of Mrs. Perier and were therefore taxable by subsection 3 of section 10400.1, Revised Codes of Montana 1935, on their full market value. See In re Wm. B. Dana Co., 164 App.Div. 45, 149 N.Y.S. 417, for a like holding on securities of a private corporation."

The ultimate disposition of the joint bank accounts and the bonds was in no way affected by the proceedings in either this court or the district court. The proceeding was merely a determination of the proper inheritance tax to be paid.

Thus did our court hold that the bonds were not taxable under subsection 6 (now section 91-4405) at 50 percent of their

full market value as property ''held in the joint names of two or more persons,'' but were taxable under subsection 3 (now section 91-4402) at their full market value.

In re Brown's Estate, 122 Mont. 451, 458, 206 P.2d 816, 820, was an appeal from an order determining inheritance tax which involved twenty-four U. S. Savings Bonds which had been purchased by the decedent and were issued payable to the decedent or in the alternative to one of her children. The bonds were deposited in a bank safety deposit box registered in the joint names of the decedent and one of her daughters.

In a consideration of any case involving inheritance taxes it is well to bear in mind this quotation from the opinion:

''A tax controversy does not arise until after the death of the donor. The transfer then is substantially testamentary. *The only question in such litigation is whether or not the gift took place during the donor's lifetime or at donor's death. The ultimate disposition of the property is not involved. In such cases a strict enforcement of the rules of delivery is necessary to protect the public interest.''* (Emphasis supplied.)

Referring to the matter of delivery our court at pp. 455, and 460, 461 of 122 Mont. and at page 821 of 206 P.2d, stated:

''* * * we hold that if there has been an actual delivery of the bonds themselves it constitutes a present *inter vivos* gift of the bonds. Since our inheritance tax laws do not impose a tax upon a gift unless it is a gift intended to take effect at or after death or is a gift in contemplation of death, it is first necessary to determine whether there was a completed gift of these bonds, and then to ascertain the nature of that gift. * * *

''As for the bonds purchased by the New York bank, again there was never any delivery on the part of the donor. Clearly the bank was acting as Mrs. Brown's agent in the purchase of the bonds. It acted on her direction in the registration of the bonds in the names of Mrs. Brown and her three children. *It continued to act as her agent in holding such bonds and it held them for the donor until the death of the donor and then by the*

*terms of the contract recited in the bonds themselves, title passed to the donees as alternate payees but for tax purposes such passage of title was a transfer intended to take effect at or after death and therefore a taxable transfer."*

Continuing, our court stated:

"To make the gift clear, definite and certain as is required for tax purposes the law provides for a written assignment. For the reason that there was insufficient evidence of delivery of the bonds as instruments of title to the donees the respondents' contention that there was a gift fails. The registration of the bonds in the names of alternate payees becomes a testamentary disposition intended to take effect at or after the death of the donor and is a taxable transfer under the provisions of section 10400.1, R.C.M.1935 [now R.C.M.1947, § 91-4401]. In re Myers' Estate, 359 Pa. 577, 60 A.2d 50."

The entire discussion of gifts in this case is to determine whether there had been an irrevocable, immediate gift *in praesenti* and under the provisions of our law not subject to inheritance tax, or whether the gift was intended to take effect at or after death, and as such, subject to inheritance tax.

Respondents contend that the cases of In re Brown's Estate, the Cole case, and Lyons v. Freshman, supra, are conclusive herein because of the statement by this court in the Lyons case that tax cases such as In re Brown's Estate do not bear the label "good in tax cases only."

We have heretofore pointed out that both the Brown case and the Cole case dealt with interpretation of inheritance tax statutes, and in each case the court's opinion stated that it was concerned only with the question of the proper tax to be assessed, and particularly in the Brown case the opinion contained definite and precise language, as heretofore quoted, showing that ultimate disposition of the property was not involved. Our court likewise pointed out that *in tax cases strict enforcement of the rules of delivery are necessary to protect the public interest.*

As between the parties here involved, there is no public interest question. The action is akin to Sylvian v. Page, supra, 84 Mont. 424, 276 P. 16, 63 A.L.R. 528, and the plaintiff stands in the shoes of her deceased husband.

It is true that the State Board of Equalization was joined as a party defendant by the plaintiff, but there is in this action no tax issue for determination. There will be an issue as to the proper inheritance taxes to be paid but such matter will arise in the estate.

We must bear in mind that in the Lyons case the wife owned the stock before her marriage. She executed the assignment on March 5, 1948, and died in a common accident with her husband on September 20, 1948, predeceasing him by about ten minutes. She died testate, her husband being a legatee under the terms of her will; her husband died intestate. In such situations if no transfer was effected the stock would be available to carry out the terms of her will, whereas if a transfer had been effected the stock would be inherited by the heirs of the husband. Thus, while the issue was the efficacy of a transfer from a wife to her husband, under the circumstances existing the question was solely whether the legatees under the wife's will would receive the benefit of property owned by her before her marriage or the heirs of her husband who we can assume would have been wholely unrelated to the wife and not subjects of her bounty.

In our view the statement in the Lyons case upon which respondents place much reliance is obiter dictum. However, so far as the Lyons case by-passed the established precedents heretofore outlined and discussed and impressed upon the law of gifts between family members the strict interpretation requirements of tax cases such as the Brown and Cole cases, it is overruled.

Turning now to the fact situation present here. Marans had only two children, Donalee now Donalee Marans Lessuk, and Howard. Donalee was away at school and since about 1950 she

had lived in the east. Howard likewise was away at school but returned to Butte and worked in his father's store commencing in the fall of 1958.

In 1951, Marans and his daughter Donalee rented a safety deposit box, both signing as renters. On two occasions Donalee examined and handled the contents of the box.

In 1955 another safety deposit box was rented in the names of Marans, Donalee and Howard.

The stocks were acquired between 1949 and 1958 and no question of transfer is involved since all stocks were issued when purchased in the names shown on the certificates.

All dividend checks were received by Marans with the knowledge and consent of the children; he had their permission to sell stocks for them or to pledge them. Marans also received and cashed dividend checks on certain stock Howard had purchased and conceded to be Howard's sole property.

Marans, Howard, and Donalee filed separate income tax returns, but the dividends shown on their returns did not in all instances correspond to their record interest in the stocks.

During the Christmas season in 1957 both children were home from school. Accompanying their father they went to the bank and the two safety deposit boxes were opened and the contents inspected. The father explained to his children how the ownership appeared on the certificates, and said ''these are yours and these are Dona's.'' The stocks were examined and handled by the father and the children and returned to the two safety deposit boxes.

Marans had been advised by his accountant that he should prepare gift tax returns but that had not been done. As the accountant put it:

''Well, the thing wasn't coordinated to such an extent they were prepared—he didn't object to have the returns prepared —it was a matter of doing it.''

In 1957 Marans made a loan and pledged certain stock as security, which stock was in record ownership of himself and

children jointly with right of survivorship. This was done with the knowledge and consent of the children. As the banker testified:

"Q. Why did you not take an authorization from Donalee Marans and from Howard Marans? * * * A. I took them because the children weren't in town at the time and I only took them because Emil Marans had an interest in it and I left the other interest go, because the stocks were valued within the amount of the loan. * * *

"Q. Did you make this loan on the strength of the pledge of any of the interest of Emil Marans or Donalee Marans or Howard Marans in this particular stock? A. No."

Certain stocks purchased jointly with his sister and individually by Howard Marans, about which no question arises here, were also in the safety deposit boxes. Marans had the keys to the boxes, and the banker testified that access to the boxes could be had by any party in whose name such box had been rented if such party had a key.

Statements of dividends were prepared for the children so they could be included in their income tax returns and Howard testified he had been making returns on dividend income since he had been in high school.

Having set forth our law and the pertinent facts it appears to us that we can conclude:

Marans, by his actions of purchasing the stocks in joint tenancy with his children, disclosed a donative intent and because such intent is expressed by written instruments is conclusive that he intended to make the gifts.

The children's acceptance is disclosed by their knowledge of the gifts, their inspection of them in the safety deposit boxes, and the fact that they included dividend income in their individual income tax returns.

As to the delivery of the certificates there appear several items to be noted. First, all certificates were deposited in safety deposit boxes rented jointly in the names of the parties;

all certificates were issued in the names of the parties in joint tenancy with the right of survivorship and thus under the doctrine that each joint tenant has the entire possession of the property, it is clear that delivery to a joint tenant constitutes delivery to all such joint tenants. In addition, here we have the statements of the father to his children while they are inspecting and handling the stock certificates, as before related. Each child had other personal property in such safety deposit boxes of undisputed personal ownership, and each child was away from the home of the other joint tenant, the father, and a jointly rented safety deposit box in a home town bank would be a natural depository for the property.

We believe these conclusions are based upon the facts here prevailing and our statutory law and interpretations by this court. There is no dearth of authority in other jurisdictions upon the question of delivery of gifts *inter vivos*. It is doubtful that one could classify the views of any court as following the weight of authority since each case must of necessity stand to a large extent upon the facts there appearing.

We have been impressed with somewhat like fact situations and opinions in other jurisdictions which reach the same conclusions we have. The following are typical.

In Eisenhardt v. Lowell, 105 Colo. 417, 98 P.2d 1001, 1003, 1004, where a husband without the knowledge of his wife, had certain stock transferred from his name alone to that of himself and his wife as joint tenants with right of survivorship and not as tenants in common, and kept the certificates in his safety deposit box, that court said:

"Plaintiff in error next asserts, and this without reference to intent to create, that the alleged joint tenure must fail because there was no delivery to Mrs. Lowell of the new certificates which, after their issuance and until her husband's death, appear to have remained in his possession.

"In the field of reported cases those most analogous to the proceeding before us relate to questions of survivorship in

bank deposits in the name of a deceased depositor and another. These cases, multitudinous in number and diverse as to conclusion, are assembled and expertly commented upon in annotations in L.R.A.1917C, 550; Annotated Cases, 1916D, 520, and 48 A.L.R. 189. In cases where, as here, the personalty in question originally belonged to the decedent, and there is no claim of a valuable consideration for the creation of the alleged joint estate, some courts regard the right of the survivor to the property to be established if there was a clear intent to create a condition embracing the essential elements of a joint estate. Typical of this line of authorities are: Erwin v. Felter, 283 Ill. 36, 119 N.E. 926, L.R.A.1918E, 776; Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N.E. 371; New Jersey Title G. & T. Co. v. Archibald, 91 N.J.Eq. 82, 108 A. 434; Deal's Adm'r v. Merchants' & Mechanics Savings Bank, 120 Va. 297, 91 S.E. 135, L.R.A.1917C, 548. Generally, the courts have held that the title of the survivor must rest upon a gift or trust. In First Nat. Bank [of Aurora] v. Mulich, 83 Colo. 518, 266 P. 1110, a joint tenancy in a bank deposit with right of survivorship was sustained on the premise of a gift *in praesenti* though enjoyment by the donee was postponed. In that case, as here, the alleged donor in the first instance was the sole owner of the personalty involved; also analogously the claimed joint tenancy was created by the sole act of the donor without the payment of valuable consideration by the donee beneficiary. There it was held that the donor's use of the word 'joint' in the following written directions to the bank: 'I hereby request that my checking account be made joint with my brother * * * for him to check on only in case of my death,' established that the transfer of a present interest was intended and that the rest of the writing sufficiently proclaimed a joint tenancy. In the case at bar Mr. Lowell's intent to so create was unequivocally apparent and there can be no doubt that the new certificates by their terms disclosed a present vested interest in the stock in Mrs. Lowell even though the right of enjoyment to the whole

thereof was postponed. In the Mulich case delivery of the writing to the bank was declared to be a good delivery. By this criterion, independently of the added factor of receipt by Mr. Lowell, as a joint tenant, the lodging with The Great Western Sugar Company of the old certificates endorsed as they were, and the request for the new in joint tenancy form and their issuance so, constituted a sufficient delivery to sustain the gift. As relating to the effect of the receipt of the securities by Mr. Lowell it may be observed that in the well considered case of Estate of Staver, 218 Wis. 114, 260 N.W. 655, it was held that delivery to a depositor of deposit certificates payable to depositor and a third person jointly, created legal ownership in both of such joint payees directly and further delivery of the certificates to such third person was unnecessary to entitle him thereto by right of survivorship. This case was followed and the same rule applied as to securities in Central Wisconsin Trust Co. v. Schumacher, 230 Wis. 591, 284 N.W. 562. Proceeding upon a somewhat similar theory the Supreme Court of Utah in Holt v. Bayles, 85 Utah 364, 39 P.2d 715, held that the delivery of a bank pass book evidencing a joint tenancy to one of the joint depositors, constituted delivery to both. Obviously, the delivery having been sufficient, possession thereafter was of minor consequence. If not a proper matter of presumption from the fact of benefit without burden, the assent of, and acceptance by, the donee through her conduct appears as clearly here as in the Mulich case. We must therefore conclude that plaintiff in error's objections grounded upon the alleged lack of delivery and subsequent possession must be resolved against her in view of our pronouncements in the above discussed case of First Nat. Bank [of Aurora] v. Mulich, supra. As to these points, the same result would attain if the theory of contract for benefit of third party, approved as the alternative ground for affirmance in the Mulich case, be applied in the case at bar.''

In the case of Crowell v. Milligan, 157 Neb. 127, 59 N.W. 2d

346, decedent owned stock in an elevator company and she directed a letter to the company requesting transfer of her stock into her name and that of a sister-in-law as joint owners with rights of survivorship. The sister-in-law, on the same letter below the signature of decedent wrote "approved" and signed her name. A new certificate of stock was issued to them jointly with right of survivorship, and returned to decedent who then returned it to the president of the company who thereafter held it subject to instructions of decedent. The sister-in-law joint tenant never had the stock in her possession; dividends were paid to decedent who also signed proxies for annual meetings. The sister-in-law testified she never claimed any share of the dividends because they were decedent's and "if anything happens to her it would go to me and if anything would happen to me it would go back to her." The court held:

"We have held in In re Estate of Scott, 148 Neb. 182, 26 N.W. 2d 799: 'The essential elements of a gift *inter vivos* are donative intent, delivery, and acceptance.

" 'Once it is ascertained that it was the intention of the donor to make a gift *inter vivos* of an undivided interest in a chattel or chose in action, and all is done under the circumstances which is possible in the matter of delivery, the gift will be sustained.

" 'In such cases, the delivery may be symbolical or constructive if as nearly perfect and complete as the nature of the property and the attendant circumstances will permit.'

"As of the time of the writing of the letters and the action taken by plaintiff immediately thereafter there was a patent donative intent as to the elevator stock and the money. The question comes as to whether or not the separate actions of Rena subsequent to the writings, the reissue of the stock, and the transfer of the funds; the construction later placed by the plaintiff on the rights of the parties; and the views of Viola as to her rights are to be considered on the question of intent.

"The rule is that where the intention to make a gift is not

clearly manifested, subsequent acts may aid in clarifying that intention, but where the intention is clear, inquiry must be confined to what occurred at the time of the transaction. In re Chapple's Estate, 332 Pa. 168, 2 A.2d 719, 121 A.L.R. 422; Glessner v. Security-Peoples Trust Co., 156 Pa.Super. 56, 39 A.2d 165; Dinslage v. Stratman, 105 Neb. 274, 180 N.W. 81, 14 A.L.R. 702; Annotations, 1 A.L.R. 1241; 105 A.L.R. 402.

"As of the time of the letter of October 25, 1947, and immediately thereafter, there was also a delivery of the stock and money to Viola and Rena jointly with rights of survivorship as the circumstances required. By endorsing her approval on the letter Viola accepted the gift.

"There is a contention made that plaintiff held the stock and the money as Rena's agent solely. Whatever plaintiff's status was before reissue of the stock and the book transfer of the funds is not material. After that time it is patent that he held for both Rena and Viola. * * *

"It is clear that it was intended that the right of survivorship exist. That was the real object in view. That right of survivorship is to be carried out in accord with the intent of the donor. Anson v. Murphy, 149 Neb. 716, 32 N.W.2d 271.

"Accordingly we hold that there was a complete gift *inter vivos,* and the title to and right of possession of the Crowell Elevator stock held by plaintiff, vested absolutely in Viola upon the death of Rena, and that judgment should be entered accordingly, and that the trial court erred in holding otherwise."

In Allender v. Allender, 199 Md. 541, 87 A.2d 608, the decedent, a widower with four adult children, married the plaintiff. Decedent was Secretary-Treasurer and Manager of a corporation, owning about one-third of the capital stock. About fourteen years after the marriage he surrendered his stock certificates and had four new certificates issued. These new certificates were each issued in decedent's name and one of his four children jointly and to the survivor. He placed the stock certificates in his safety deposit box and did not inform any of his

children about the transactions. He received the dividends and voted the stock for two years following the transfers and then died. His widow filed suit to set aside the transfer. The court held:

"We think the surrender of the old certificates and the issuance of new ones was sufficient to effect a present transfer of the donor's interest. In National Bank v. Watsontown Bank, 105 U. S. 217, 222, 26 L.Ed. 1039, cited in Baltimore Retort & Fire Brick Co. v. Mali, 65 Md. 93, 96, 3 A. 286, it was said: 'The transfer, when thus consummated, destroys the relation of membership between the corporation and the old stockholder, with all its incidents, and creates an original relation with a new member, free from all antecedent obligations. * * * Nothing more remained to be done to make the conveyance of title complete and absolute, and so far as the bank was concerned, it was irrevocable'. Nor does the fact that delivery of the new certificates was made to the donor in his capacity of joint owner vitiate the transaction, since 'the possession of one cotenant is in contemplation of law the possession of the other'. Young v. Cockman, 182 Md. 246, 251, 34 A.2d 428, 431, 149 A.L.R. 1006. The cases generally so hold. See note 153 A.L.R. 934 and cases cited. We find nothing in the Uniform Stock Transfer Act, Code, Article 23, section 55 et seq., at variance with this principle. Before enactment of that Act in 1910, it had been held that a gift of shares of stock could not be effected by delivery of the certificate, endorsed or with separate assignment, without transfer on the books. Baltimore Retort & Fire Brick Co. v. Mali, supra. The effect of the Act was to make the certificate negotiable, not to throw doubt upon the validity of a transfer on the books. In Snowden v. Crown Cork & Seal Co., 114 Md. 650, 657, 80 A. 510, 512, decided soon after enactment of the Statute but with reference to a transfer made years before, the court said: 'Independently of the question as to the capacity of an unincorporated society to become the recipient of a gift, there

can be no doubt as to the transfer by the donor in this case being absolute and irrevocable. Albert v. Albert, 74 Md. [526] 534, 22 A. 408; 20 Cyc. 1212; 14 Am. & Eng. Encyc. Law (2d Ed.) 1009. Every legal requirement was observed to divest him of all title to the stock and to place it securely in the donee. Baltimore Retort & Fire Brick Co. v. Mali, 65 Md. 93, 3 A. 286; Pennington v. Gittings, 2 Gill & J. 208. The assignment, surrender, and cancellation of the old certificate, and the issue and delivery of the new one to the assignee, effectually accomplished the purpose of Mr. Crook to give the stock to the Baltimore Branch for the objects indicated * * *.'

"Nor is it material that the donees were not informed concerning the transfer. Acceptance of the gift is presumed until the contrary is shown; or, as the principle is otherwise stated, the gift is effective on transfer, subject to the right of the transferee to repudiate title and refuse to accept the gift. Machen, Corporations § 872; Standing v. Bowring (C. A.) 31 Ch.D. 282; Roberts' Appeal, 85 Pa. 84; Phillips v. Plastridge, 107 Vt. 267, 269-270, 179 A. 157, 99 A.L.R. 1074. This is the law of gifts, not peculiar to gifts of shares or securities. * * *

"The appellee contends, however, that the fact that the donor drew the dividends and voted the stock until his death, indicates an intention on his part not to make a present gift but to reserve a power of dominion over the stock. The appellee relies upon the case of Whalen v. Milholland, 89 Md. 199, 43 A. 45, 44 L.R.A. 208. The purported gift in that case was of a savings bank account, without any declaration of trust, where the donor retained the passbook and the right of withdrawal. It was held that the gift was incomplete, primarily because the donor retained a 'locus penitentiae' in the form of authority to draw the money. Cf. Pomerantz v. Pomerantz, 179 Md. 436, 440, 19 A.2d 713. In the instant case the donor retained no such authority; he could not have legally rescinded the transaction or transferred the certificates without the consent of the co-owners."

In Zander v. Holly, 1 Wis.2d 300, 84 N.W.2d 87, that court dealt with an action wherein plaintiff had assigned certain shares of stock owned by her, to herself and defendant as joint tenants. After such transfer, dividend checks were made out to both parties. Later additional shares of stock were purchased in the joint names of the parties with funds furnished by plaintiff. Plaintiff sought, by the action, to set aside the joint tenancies on various grounds. In its opinion the court stated:

"So far as the 29 shares of A. T. & T. stock owned by the plaintiff and transferred to the names of herself and the defendant as joint tenants with full rights of survivorship are concerned, it is clear that no joint tenancy therein was created because there was neither unity of title nor unity of time and under the circumstances a tenancy in common was created rather than a joint tenancy with, however, the type of survivorship or indestructible remainder in the survivor that is described in the Hass case [248 Wis. 212, 21 N.W.2d 398, 22 N.W.2d 151].

"We have a different situation with respect to the 21 shares purchased thereafter in the names of the parties as joint tenants. In that situation the four unities are present and a joint tenancy with right of survivorship was created. Many states, including Wisconsin, have enacted the Uniform Stock Transfer Act, § 183.01 et seq. In the states that have adopted that act it is held that there is a complete gift of corporate stock where the certificate has been transferred at the direction of the owner to the donee on the books of the corporation and a new certificate issued in the name of the donee or where a certificate is issued in the first instance in the name of the donee although the certificate so issued is retained by the donor and not delivered to the donee. These decisions obviate proof of delivery. This question was considered in Re Estate of Heller, 210 Wis. 474, 246 N.W. 683. Our court there said (210 Wis. at page 481, 246 N.W. at page 685):

" 'If the present proceeding involved a transfer of stock issued to Mr. Heller and delivered by him to the corporation for transfer and reissue to the members of his family without delivery of such certificate to the transferees, we would have to hold that section 183.01, Stats., is controlling. That section provides among other things as follows:

" ' "Title to a certificate and to the shares represented thereby can be transferred only:

" ' " "(a)    By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

" ' " "(b)    By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment of power of attorney may be either in blank or to a specified person." ' '

"The above quotation was *dicta* but it does call attention to the Uniform Stock Transfer Act which was then and is now the law in Wisconsin. We hold, therefore, that by compliance with the Uniform Stock Transfer Act there was sufficient delivery of the shares of stock.

"As to the certificate for the 29 shares of the A. T. & T. stock the record makes it clear that the plaintiff intended to and did reserve the income therefrom during her lifetime. In Wisconsin a reservation of interest or dividends during the donor's life does not destroy a gift nor militate against an actual change of title. McNally v. McAndrews, 98 Wis. 62, 73 N.W. 315; Pirie v. Le Saulnier, 161 Wis. 503, 154 N.W. 993; In re Estate of Merrill, 196 Wis. 351, 220 N.W. 215, 59 A.L.R. 1528; In re Estate of Duwe, 229 Wis. 115, 281 N.W. 669.

"Since a true joint tenancy was created in the 21 shares of A. T. & T. stock any attempted reservation of the income

by the plaintiff would be inconsistent with the nature of the joint tenancy, unless expressly reserved upon the stock certificate itself or by written instructions filed with the corporation. The purpose of the Uniform Stock Transfer Act is to make certificates of stock negotiable and to invest the certificates themselves with many of the incidents of tangible personal property. Therefore we are forced to conclude that each of the parties is entitled to one-half of the dividends from the 21 shares of A. T. & T. stock.''

As to the jointly issued stocks, the court was in error in concluding that the stocks belonged to Emil Marans at the time of his death and became part of his estate.

Considering now the stocks issued in the name of the son and those in the names of the son and daughter as tenants in common.

The only difference in the fact situation prevailing with reference to these stocks is that Marans was not a co-tenant with either donee. Save and except for the one factor we heretofore mentioned, that of the possession of one joint tenant being the possession of all, all other conclusions are the same.

In addition there is here present the question of the donor's dominion and control over the certificates of stock. Marans' name does not appear upon any of them. Section 15-628, R.C.M. 1947, provides:

''Title to a certificate and to the shares represented thereby can be transferred only,

''(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

''(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented there-

by. Such assignment or power of attorney may be either in blank or to a specified person, or

"(c) By delivery of the certificate with an assignment endorsed thereon or in a separate instrument signed by the trustee in bankruptcy, receiver, guardian, executor, administrator or other person duly authorized by law to transfer the certificate on behalf of the person appearing by the certificate to be the owner of the shares represented thereby."

In view of our statutory law what could Marans do with the stock certificate? Obviously he could not sell or otherwise transfer them without the endorsement of the person or persons named upon the certificate as owner.

While these gifts were not verbal since they are represented by written instruments, yet the provisions of section 67-1707, R.C.M.1947, supra, are worthy of note. By the issuance of the certificate in the name of the donee was not the means of obtaining possession and control granted? By the same token was there not an actual delivery accomplished? We believe there was, and coupled with the factors of deposit in safety deposit boxes rented in the names of the owners, and the other factors previously mentioned, we hold there was a delivery by the donor to the donees.

It does appear that the weight of authority in the reported cases supports the doctrine that issuance of stock certificates in the name of a donee by a corporation, standing alone, constitutes the donee the legal title holder of the stock. See annotations in 99 A.L.R. 1080, and 23 A.L.R.2d 1186; 24 Am.Jur., Gifts, § 80, pp. 771, 772.

As to the stocks issued in the name of the son and those in the names of the son and daughter as tenants in common, the court was likewise in error in concluding that the stocks belonged to Emil Marans at the time of his death and became part of his estate.

The decree of the district court is reversed insofar as the jointly issued stocks and the stocks issued in the names of

the children individually and by them as tenants in common are concerned, and the cause is remanded with instructions to enter a decree providing that Howard Marans and Donalee Marans Lessuk, as surviving joint tenants are the sole owners of the stocks herein, in question, which were issued in joint tenancy with the decedent, and that as to the stocks issued individually or as tenants in common in the names of Howard Marans or Donalee Marans Lessuk, they are the sole owners of such stocks so standing in their name or names.

It is so ordered.

MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON, concur.